UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

     v.

ADAM SPRENGER

18 CR 105

Honorable John J. Tharp, Jr

**<u>GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS</u>**

# **TABLE OF CONTENTS**

I. FACTUAL BACKGROUND.................................................…..……………1

     A. Defendant's Sexual Exploitation of Victims A & B.…………….........1
     B. Defendant's Sexual Exploitation of Victim C……………………..……3
     C. Defendant's Sexual Exploitation of Victims D & E……………….…..5
     D. Defendant's Collection of Child Pornography………………………….…5

II. GUIDELINE CALCULATIONS…………………………………………7

III. THE FACTORS SET FORTH IN 18 U.S.C §3553(A) WARRANT A WITHIN-
     GUIDELINES SENTENCE OF 50 YEARS' IMPRISONMENT………………8

     A. Nature and Circumstances of the Offense…………………………..……8
     B. History and Characteristics of the Defendant……………………………10
     C. The Need to Reflect the Seriousness of the Offense, Afford Adequate
          Deterrence, Promote Respect for the Law, Provide Just Punishment,
          Protect the Public, and Provide Correctional Treatment………………14

IV. RESTITUTION……………………………………………………………15

     A. Background………………………………………………………15

     B. Production Victims………………………………………………17

     C. Possession Victims………………………………………………22

V. SUPERVISED RELEASE……………………………………………24

VI. CONCLUSION……………………………………………………25

## <u>TABLE OF AUTHORITIES</u>

*Gall v. United States*, 552 U.S. 38, 49–50 (2007)……………………….................…8

*Lagos v. United States*, 138 S. Ct. 1684 (2018)………………………………………18

*New York v. Ferber*, 458 U.S. 747, 760 n. 10 (1982)……………………………………9

*Osborne v. Ohio*, 495 U.S. 103, 111 (1990)……………………………………………9

*Paroline v. United States*, 572 U.S. 434 (2014)………………………………………17

*United States v. Baker,* 672 F.Supp.2d 771, 777 (E.D. Tex. 2009)…………………19

*United States v. Bour*, 2015 WL 58761, (N.D. Ind. Jan. 5, 2015)…………………20

*United States v. Cano-Rodriguez*, 552 F.3d 637, 639 (7th Cir. 2009)……………8

*United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001)……………………17

*United States v. Desnoyers*, 708 F.3d 378, 389 (2d Cir. 2013)…………………16

*United States v. Dillard*, 891 F.3d 151, 158, 161 (4th Cir. 2018)………………18

*United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007)…………………………15

*United States v. Hoskins*, 876 F.3d 942, 947 (8th Cir. 2017)……………………17

*United States v. Klug*, 670 F.3d 797, 800–01 (7th Cir. 2012)…………………9

*United States v. Roberts*, 698 F.3d 937, 943 (7th Cir. 2012)……………………...16

*United States v. Walker*, 353 F.3d 130, 131 (2d Cir. 2003)……………………16

*United States v. Whitley*, 354 F.Supp.3d 930, 934 (N.D. Ill. 2018)……………17

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, Jr., United States Attorney for the Northern District of Illinois, hereby submits its position paper as to sentencing factors, and asks this Court to impose a sentence of 50 years' imprisonment, which is the applicable Guidelines range.

## I.  FACTUAL BACKGROUND[1]

The defendant manufactured, possessed, and traded in child pornography. He sexually exploited children in his own home, children who trusted him, molesting and masturbating on them on camera and distributing images and videos of them to men across the Internet. He further sexually exploited additional children he became familiar with through contacts he met over Kik Messenger. Finally, defendant amassed a collection of over 1,300 images and videos constituting child pornography that depicted minor victims, some as young as toddlers, being molested and orally, anally, and vaginally raped.[2]

### A.  Defendant's Sexual Exploitation of Victims A and B

Between approximately 2015 and 2018, defendant lived with his girlfriend, Individual A, and her four minor children, including Victim A and Victim B. These

---

[1] Unless otherwise notated, the facts presented in this section are from defendant's plea agreement, the Government's Version of the Offense and associated exhibits, the PSR, and the photos and videos that are the bases for the counts of conviction, the stipulated offense, and relevant conduct.

[2] Prior to sentencing, the government will provide to the Court a binder containing a sample of the videos and images that are the subject of the counts of conviction and the stipulated offense, as well as a designated laptop computer on which to view the videos.

children, who should have been able to trust that they were safe from predators within the walls of their own home, were continuously sexually exploited by defendant without their knowledge.

Defendant made videos of himself masturbating on and around sleeping Victims A and B, as well as their belongings. While making the videos that are the subject of the stipulated offense, defendant fondled a sleeping Victim B's clothed groin and buttocks, masturbated over her, and ejaculated on her pants. Victim B was 13 years old at the time. Defendant sent these videos to several men over Kik Messenger. G.V. Exhibits A, B. Based on Kik Messenger chats recovered from defendant's phone, defendant also may have drugged Victim B before molesting her that night. On one chat with another user, defendant discusses being "tempted to cum on [Victim B]" and, noting that she had been alone in her room the night before, stated, "If I knew the setup was there I would have put something in [Victim B's] drink last night. Haha." G.V. Exhibit A. Defendant then stated he was going to "slip some sleepy stuff" into Victim B. *Id.* Defendant sent pictures of himself pouring a white powder into a cup and mixing it into the liquid. *Id.* Defendant later stated, "What the hell?? Shes still wide awake??" *Id.*

Defendant also took a series of photographs of himself engaging in sexually explicit conduct with a sleeping Victim A, who was 14 years old at the time. These images, which are the subject of Count One, included defendant's naked, erect penis next to Victim A's face, his tongue next to Victim A's clothed vagina, and his naked, erect penis next to Victim A's hand.

Defendant became obsessed with Victim A, and installed a spy camera in the bathroom to take surreptitious videos of her as she changed and used the bathroom. Defendant also regularly took "creepshots" of Victim A's clothed groin and buttocks, using a cell phone application that kept his home screen dark to hide the fact that he was taking photographs. He regularly shared these images and videos with other men over Kik Messenger. Defendant further regularly masturbated on Victim A and Victim B's belongings, and invited strange men to the home to masturbate on their underwear, beds, and other belongings. *See* G.V. Exhibit C, p. 6; G.V. Exhibit L, p. 2.

## B. Defendant's Sexual Exploitation of Victim C

Despite defendant's extensive sexual exploitation of the girls in his own home, his appetite for the abuse of minor girls was far from satiated. After meeting another individual named Sean McCarthy[3] over Kik Messenger, defendant went to McCarthy's residence in the early morning hours on at least one occasion to masturbate on McCarthy's girlfriend's minor child, Victim C. *See United States v. Sean McCarthy*, 18 CR 119, R. 39 at 3. Victim C was 14 years old at the time. This video was found on defendant's micro SD card. *See* R. 38 at 5. Defendant and McCarthy planned the incident in advance, with defendant parking down the street and waiting until McCarthy's girlfriend, Individual B, left for work. Defendant and McCarthy began masturbating in the kitchen, where defendant was filming on his

---

[3] On July 11, 2019, McCarthy pled guilty to one count of production of child pornography, pursuant to a written plea agreement. *United States v. McCarthy*, 18 CR 119, R. 38, 39. His sentencing is set for October 30, 2019, before the Honorable Judge Manish S. Shah. *Id.*, R. 38.

phone. Defendant pointed the camera at his penis and the two men entered Victim C's bedroom. Defendant continued to masturbate over Victim C as she slept. As defendant began to ejaculate, McCarthy pinched some of the ejaculate off of defendant's penis and flicked it three times in a downward manner toward Victim C's face. Defendant sent this video to at least three individuals, including McCarthy (over text message) and two other men (over Kik Messenger). *See McCarthy*, 18 CR 119, R. 39 at 4; G.V. Exhibits H, I.

Defendant developed an obsession with Victim C as well, following her in person and contacting her via text message from different numbers, despite her blocking him and telling him to stop. For example, in one Kik Messenger chat, defendant shared with McCarthy screenshots of defendant attempting to communicate with Victim C over text message. G.V. Exhibit G. McCarthy encouraged defendant to tell Victim C that "she sat across from you at Cheesecake Factory." *Id.* Defendant asked Victim C "if she wanted to make a quick 60 bucks." *Id.* Victim C blocked defendant's phone number, and defendant texted from a different number. *Id.* ("Little cock sucker blocked me. Shes getting angry dick now."). Defendant sent McCarthy a screenshot of his text to Victim C from a different number, in which Victim C tells defendant to stop. *Id.* In the same chat, defendant also stated that he "need[s] a vid of [Victim C] eating my cum again. All I have is the memory" and "Im pissed at [Victim C] now. So she needs to eat my cum again." *Id.* Defendant's electronic devices at the time of the search contained a wealth of "creepshots" of Victim C, many of which were focused on her clothed buttocks and groin. Defendant's

Kik Messenger history shows that he was part of a group chat entitled "[Victim C's first name] lovers." G.V. Exhibit I, p. 1; *see also* G.V. Exhibit L, p. 6.

### C. Defendant's Sexual Exploitation of Victims D and E

Law enforcement recovered from defendant's electronic devices a video that he produced depicting his naked, erect penis as he masturbated in the same room as Victims D and E, Individual A's 8-year-old niece and 2-year-old nephew. *See* PSR at ¶ 31; G.V. Exhibits E, F. The video panned to the children, who were playing on the floor, and back to defendant's penis as he masturbated. Victims D and E did not appear aware of defendant's conduct on the video.

### D. Defendant's Vast Collection of Child Pornography

In addition to the production of the above-described videos and images, defendant also collected over 1300 images and videos depicting child pornography, including images and videos of children as young as toddlers being forced to engage in oral, vaginal, and anal intercourse, including sadomasochistic conduct. *See* R. 38 at 3-6. Image after image of prepubescent children being sexually exploited in the cruelest and most sickening ways possible for the sexual gratification of the defendant and others who downloaded and traded these images.

Defendant utilized several electronic devices to view and store images and videos depicting child pornography, including: (1) an HP laptop computer, model Pavilion DM4, bearing serial number CNU1311MPR; (2) an HP laptop computer, model Compaq nc6400, bearing serial number CND70528HT; (3) a Verizon Samsung Galaxy S7 cellular phone, bearing IMEI number 359764081485953; (4) a Samsung

EVO 16 GB micro SD card, bearing serial number KPABT27PB629; and a DANE-ELEC 2 GB USB drive, bearing serial number 4820-B6C1.[4]

Each of defendant's devices contained images and videos depicting child pornography. For example, on the Samsung EVO micro SD card, law enforcement recovered approximately 387 videos and 66 images depicting child pornography. These include a video entitled DSCN2704.MP4.mpg, which depicts a girl who appears to be under five years old being orally penetrated by an adult male, as well as a video entitled Luna4yo-First Anal.avi, which depicts a very young girl being anally penetrated by an adult male. NCMEC identified both of these child victims as real children. Real children whose horrifying rape and abuse the defendant downloaded and viewed for his own pleasure.

Law enforcement also found on defendant's devices videos that McCarthy had produced of McCarthy masturbating next to Victim F, Victim C's younger sister. *See McCarthy*, 18 CR 119, R. 39 at 2-3. In one of these videos, for example, McCarthy pointed the camera downward showing his naked, erect penis as he masturbated. *Id.* McCarthy then panned the video upwards to show Victim F seated at a table with her back to the camera. *Id.* at 3. McCarthy walked towards the table and continued to masturbate while standing directly behind Victim F. *Id.* McCarthy sent the video of Victim F to defendant over Kik Messenger. *Id.* Victim F was 11 or 12 years old at the time of the video. *Id.* at 2. Law enforcement also recovered numerous clothed images of Victim F in bikinis and/or focused on Victim F's groin or buttocks.

---

[4] Defendant has agreed to the forfeiture of each of these electronic devices, pursuant to his written plea agreement. R. 38 at 18.

Defendant further tried to exploit Victim F via Kik chats with McCarthy: On one occasion, McCarthy sent defendant a photograph of Victim F's water bottle and defendant directed McCarthy to "wash your cock." G.V. Exhibit J. Defendant warned that Victim F would notice if McCarthy ejaculated into the bottle, but stated "if you stir it up with tour [sic] dick she wont. It'll still be clear." *Id.*

## II.    GUIDELINE CALCULATIONS

The government has reviewed the criminal history and offense level calculations set forth in the Presentence Investigation Report submitted by the United States Probation Office. The government agrees with the calculations contained in the PSR. The government agrees with Probation that defendant's offense level for Count 1 is 36, offense level for Count 4 is 38, and offense level for the stipulated offense is 40. PSR at ¶¶ 42-68. After grouping, the combined offense level is 43. PSR at ¶¶ 69-72. Applying the five-level enhancement under § 4B1.5(b)(1) and the three-level reduction for timely acceptance of responsibility, the total offense level is  45. PSR at ¶¶ 73-76. (Under Chapter 5, Pt. A, App. N. 2, this is treated as an offense level of 43). With a criminal history category is I, defendant's advisory Guidelines imprisonment range is life imprisonment.  PSR at ¶¶ 86, 152. However, the statutorily authorized maximum sentence is 50 years' imprisonment. Thus, pursuant to Guideline § 5G1.2(b), the guidelines sentence is 50 years' (600 months) imprisonment. PSR at ¶ 152. Defendant is subject to a minimum term of imprisonment of 15 years.  PSR at ¶ 151.

## III. THE FACTORS SET FORTH IN 18 U.S.C. § 3553(A) WARRANT A WITHIN-GUIDELINES SENTENCE OF 50 YEARS' IMPRISONMENT

The Sentencing Guidelines provide a starting point and initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). Although a sentence within the Guidelines range is presumptively reasonable, *United States v. Cano-Rodriguez*, 552 F.3d 637, 639 (7th Cir. 2009), the court must consider the factors set forth in Title 18, United States Code, Section 3553(a) in determining an appropriate sentence. Considering these factors, a sentence within the advisory guidelines range of 50 years' imprisonment is sufficient, but not greater than necessary, to reflect the seriousness of defendant's offense, promote respect for the law, provide just punishment for defendant's crime, and afford adequate deterrence to similar criminal conduct.

### A. Nature and Circumstances of the Offense

The depravity and cruelty of defendant's conduct, which is more fully laid out above and in the Government's Version of the Offense, cannot be overstated. Defendant produced videos of himself masturbating on and molesting young girls, in some cases girls who knew him, trusted him, and lived with him. Defendant's videos and photos depict him ejaculating on and fondling his victims as they slept, as well as putting his tongue directly next to Victim A's clothed vagina. Defendant did not just create these videos and photos, he also distributed them to others, perpetuating and amplifying the victimization of the child victims. He subjected his girlfriend's children to strange men he met over Kik, not only sending the videos of himself masturbating on and molesting them, but also regularly sending photos of their

clothed groins and buttocks over the Internet to men with a sexual preference for minor girls (particularly Victim A). Defendant further collected image after image of prepubescent children he had never met being sexually exploited in the cruelest and most sickening ways possible for his own sexual gratification, including anal and vaginal rape of children as young as toddlers.

Defendant's victims and their parents will have to live with the fact that these photos and videos depicting their abuse were disseminated to others, and that they may be viewed for years to come by those who derive sexual gratification from such images. The Supreme Court has observed that "child pornography is pernicious precisely because the harm it produces is not limited to the sexual abuse it depicts." *United States v. Klug*, 670 F.3d 797, 800–01 (7th Cir. 2012); *see New York v. Ferber*, 458 U.S. 747, 760 n. 10 (1982). "Because the child's actions are reduced to a recording," the Court reasoned, "the pornography may haunt him in future years, long after the original misdeed took place." *Ferber*, 458 U.S. 760 n. 10 (1982); *see also Osborne v. Ohio*, 495 U.S. 103, 111 (1990) (observing that "pornography's continued existence causes the child victims continuing harm by haunting the children in years to come"). "Indeed, in the years since *Ferber* was decided, federal courts have focused on the enduring harm to the child victims in concluding that child pornography offenses warrant harsh sentences." *Klug*, 670 F.3d at 800–01 (7th Cir. 2012) (collecting cases).

The nature and circumstances of these offenses weigh heavily in favor of a lengthy custodial sentence, to provide justice for the children victimized to create

9

these images and to reflect the abhorrence our society and our justice system holds for this conduct.

### B.    History and Characteristics of the Defendant

Defendant is a dangerous pedophile who preys on young girls. In his statements to Probation, defendant admitted to masturbating to climax while viewing child pornography and fantasizing about teaching 15- and 16-year-old girls how to perform oral sex. PSR at ¶¶ 117, 123. But defendant's online presence, as discovered by law enforcement, paints a much grimmer picture than these admissions alone. First, defendant's sexual preferences clearly include children far younger than 15 or 16, as the child pornography found on his devices depict children as young as toddlers being orally, anally, and vaginally penetrated. PSR at ¶ 15; R. 38 at 5. In addition, defendant openly fantasized about children as young as eight in his Kik chats with McCarthy. *See* G.V. Exhibit J. (In referring to a photo of his ex-girlfriend's daughter that he had sent McCarthy, for example, defendant stated, "ex's dau . . . Used to sniff her when she was 8"). Second, although defendant stated to Probation that he has never fantasized about harming a sexual partner, PSR at ¶ 123, his Kik chats show otherwise. In one Kik chat with McCarthy, for example, defendant and McCarthy discussed masturbating to and desiring to have sex with deceased teenagers. G.V. Exhibit J. Defendant sent a gruesome photo of what appears to be a deceased minor female, and stated, "I'd definitely take a taste. While she was still warm . . . Maybe 4 or 5 pumps for me." *Id.* Later in that same chat, defendant and McCarthy discussed defendant's interest raping in McCarthy's fiancé's sister

(Individual C) and her eight-year-old child (Minor G) Defendant stated that he wanted to "gain [Individual C's] trust to let me into her place. Drug her, fuck her, then find [Minor G's] bedroom." *Id.* Defendant also openly fantasized about drugging and raping Victim C. *Id.*

But defendant does not merely fantasize. He regularly acts on his depraved sexual desires for minor girls, including by making videos of himself masturbating on minors. As discussed in Section I.A. above, defendant also likely drugged Victim B before molesting her on video. The fact that Victim B did not wake up while defendant fondled her vagina and buttocks is evidence that defendant did, in fact, put "sleepy stuff" in her drink, just as he had boasted and provided photo evidence of over Kik. Especially where these photos were not defendant's only reference to drugging girls and women. *See*, *e.g.*, G.V. Exhibit J (McCarthy: "You get to fuck one. Who do u choose?" . . . Defendant: "[Victim C]. But she's drugged. And completely gone. And I have like 5 hours."); G.V. Exhibit J (Defendant stated that he wanted to "gain [Individual C's] trust to let me into her place. Drug her, fuck her, then find [Minor G's] bedroom."). In addition, as discussed in Section I.B. above, defendant also followed Victim C in person and repeatedly harassed her over text message, after receiving her location and phone number from McCarthy. Defendant also made more than one disturbing reference to Victim C "need[ing] to eat [his] cum again," G.V. Exhibit G, indicating that, at some point, Victim C had ingested his ejaculate.

Nor did defendant just fantasize about raping Individual C and Minor G; he took substantial steps towards making those fantasies a reality. On a Kik chat

11

between defendant and McCarthy, they discussed how defendant wanted to "assume another identity" to get Individual C and Minor G so that Minor G could "taste [his] load" and then "be able to disappear." G.V. Exhibit J. Defendant expressed frustration that Individual C "knows I'm adam" and that the "cops have [his] fingerprints." *Id.* In an interview with law enforcement, Individual C confirmed that defendant had visited her at her place of employment on approximately five occasions. *See* G.V. Exhibit K. She recalled defendant's name, as he made a purchase on his first visit, and identified his photograph. *Id.* Individual C stated that defendant had asked her out and she declined. Id. Individual C stated that she told defendant he was "creeping [her] out" and she alerted security of his presence on several occasions. *Id.* Individual C also recalled that defendant requested to follow her on Instagram, and she denied and blocked him. *Id.*

Defendant further obtained sexual gratification by masturbating on his girlfriend's minor daughter's belongings, including ejaculating into Victim A's retainer and on her cheerleading outfit, and inviting strange men that he'd met over Kik to his residence to masturbate on Victim A and Victim B's underwear, beds, and other belongings. G.V. Exhibit L; PSR at ¶ 31.

The government recognizes some mitigating factors in defendant's history and characteristics, including his lack of violent or child exploitation-related criminal history, family support, and reported history of being abused. PSR at ¶¶ 86, 97, 107. Defendant's lack of significant criminal history, however, is taken into account in his Guidelines and does not differentiate him from other, similar offenders who are

caught for the first time. In fact, it is not unusual for defendant who is being sentenced for child exploitation crimes, to have a lack of criminal history.

It is worth noting, however, that defendant does have a prior driving under the influence conviction from 2012, and additional arrests for driving under the influence in 2008 and 2014. PSR at ¶¶ 85, 91-92. Defendant further admitted to being in three additional car accidents while intoxicated that did not end in arrests. PSR at ¶ 130. Defendant's repeated decision to drive while under the influence, which could easily have resulted in the serious injury or death of innocent people, only further paints the picture of an individual who has no regard for others.

Defendant reports that he drank to excess due to a substance abuse problem and was "drunk every instance" during the commission of the instant offense. PSR at ¶ 130. But alcohol cannot be blamed for defendant making the same criminal choice over and over again. Defendant produced videos and images depicting child pornography on multiple occasions, distributed those videos to other men over the Internet, filmed himself masturbating all over Victim A's belongings and photographs, downloaded a "spycam application" on his phone to take "creepshots" of the minor victims without their knowledge, regularly distributed those "creepshots" to other men over the Internet, and installed a camera in the bathroom to film the minor victims without their knowledge. PSR at ¶¶ 14, 16-17, 26-27, 31; *e.g.* G.V. Exhibits G.V. Exhibits A, B, G, H, J. When distributing the images and videos depicting child pornography or "creepshots," for example, defendant had sound enough mind to access the Internet on his phone, locate the Kik Messenger

13

application, log in, enter a particular group chat or individual chat, and send the videos and/or images with coherent accompanying messages. *See*, *e.g.*, G.V. Exhibits A, B, G, H, J. This is not the behavior of someone who was so intoxicated as to suspend the power of reason. Defendant may have been emboldened by alcohol, but it was the defendant, not alcohol, who made the decision time after time to sexually exploit young girls for his own gratification.

### C. The Need to Reflect the Seriousness of the Offense, Afford Adequate Deterrence, Promote Respect for the Law, Provide Just Punishment, Protect the Public, and Provide Correctional Treatment

The production and possession of child pornography is an extraordinarily serious offense that threatens the safety of our children and communities. The instant offense involves over 1300 images and videos depicting child victims whose abuse, in some cases, was executed and recorded by defendant. These photographs and videos have a significant, lasting impact on the lives of many, including the child victims and their families. Defendant's sentence should reflect the seriousness of the offense, provide just punishment, and promote respect for the law.

In addition, the goals of sentencing include both specific and general deterrence. This is not a case in which the defendant had a one-time lapse in judgment. Instead, defendant took videos depicting child pornography, hundreds of photographs constituting "creepshots" of his victims' groins and buttocks, and masturbated on and molested the girls in his own home who trusted that their home was safe. Defendant himself referenced in Kik chats with other individuals that this was not his first time sexually exploiting children to whom he had access, referencing

14

an eight-year-old daughter of an ex-girlfriend whom he used to "sniff." Defendant himself told law enforcement that he stole pictures from Instagram or Facebook of his ex-girlfriend's daughters, and still looks them up. G.V. Exhibit C at 5. Defendant further possessed over 1,300 images and videos depicting the rape and other abuse of children as young as toddlers. The nature of defendant's conduct, and the sheer amount of images and victims that are tied to his offenses, show the critical need for specific deterrence in this case.

General deterrence is also a significant concern. Others must be deterred from producing and possessing child pornography, and from drugging and molesting minor victims for their own sexual gratification. *See United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) ("deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing"). A 50-year sentence is necessary here to send the message to others who are tempted to enter this sick world and contribute to the cycle of demand for these images that if they obtain, share, or possess child pornography, the consequences will be severe. And a within-Guidelines sentence is further necessary to send the message to the victims of these horrific crimes that they are not objects to be used for people's deranged gratification, but precious human beings who matter. That although they were not protected at the time of their victimization, society now will protect them with all of its resources and punish severely those involved in their rape, molestation, and exploitation.

## IV. RESTITUTION

### A. Background

15

In light of the defendant's convictions, pursuant to 18 U.S.C. §§ 2259 (which was initially enacted as a component of the Violence Against Women Act of 1994) and 3663A (the Mandatory Victims Restitution Act, or MVRA), the Court must order restitution to the victims of defendant's production and possession of child pornography offenses, in an amount determined by the Court.

Under these laws, the defendant must pay for "the full amount of the victim's losses," which may include the following:

(A)     medical services relating to physical, psychiatric, or psychological care;

(B)     physical and occupational therapy or rehabilitation;

(C)     necessary transportation, temporary housing, and child care expenses;

(D)     lost income;

(E)     attorneys' fees, as well as other costs incurred; and

(F)     any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(1), (3). Section 2259(a) makes restitution mandatory.

Courts have no discretion to "award restitution for anything less than the full amount of the victim's losses." *United States v. Desnoyers*, 708 F.3d 378, 389 (2d Cir. 2013) (quoting *United States v. Walker*, 353 F.3d 130, 131 (2d Cir. 2003)). Congress intended as much because "[t]he MVRA's overriding purpose is to compensate victims for their losses." *United States v. Roberts*, 698 F.3d 937, 943 (7th Cir. 2012), *aff'd*, 572 U.S. 639 (2014) (internal citations and quotations omitted). A court may not decline to issue a restitution order because of "the economic circumstances of the defendant"

16

or "the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source." 18 U.S.C. § 2259(b)(4). A victim's losses for purposes of restitution may be retrospective or prospective, including damages for the cost of future therapy. *United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001); *United States v. Whitley*, 354 F.Supp.3d 930, 934 (N.D. Ill. 2018) (collecting cases). Victims do not need to be in therapy or even interested in seeking therapy at the time of restitution. *Whitley*, 354 F.Supp.3d at 935.

### B. Production Victims

Here, there is no question that Victims A, B, C, D, and E, are victims of the defendant's horrific offenses. Defendant took the photos and videos sexually exploiting each of these minor victims, and, in the case of Victims B and C, distributed the videos to other men over the Internet. *See* R. 38 at 5, 7-8; G.V. Exhibits B, H, I.

The statute seeks "to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." *Id.* (internal citations and quotations omitted). In making a victim whole again, restitution does not require a "precise mathematical inquiry." *United States v. Hoskins*, 876 F.3d 942, 947 (8th Cir. 2017), cert. denied, 138 S. Ct. 2589 (2018) (quoting *Paroline v. United States*, 572 U.S. 434, 459 (2014)). Instead, courts use discretion and judgment to analyze the "'significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses.'" *Id.* (quoting *Paroline*, 572 U.S. at 459).

17

Moreover, because of "the devastating and long-term effects that the sexual exploitation of children can have both upon the victims of that abuse and greater society," a victim's losses for purposes of restitution may be retrospective <u>or prospective</u>. *United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001) (citing *New York v. Ferber*, 458 U.S. 747 (1982)) (Emphasis added). In *Danser*, the Seventh Circuit specifically found that "Section 2259 allows for restitutionary damages for the future costs of therapy." *Id.* This is so because the child's loss as a result of her victimization "lasts a lifetime." *Whitley*, 354 F.Supp.3d at 934.

The government bears the burden of proving the restitution amount by a preponderance of the evidence. *See United States v. Hosking*, 567 F.3d 329, 334 (7th Cir. 2009), *abrogated on other grounds by Lagos v. United States*, 138 S. Ct. 1684 (2018); *see also* 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount of restitution shall by resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of loss sustained by a victim as a result of the offense shall be on the attorney for the Government."). Regardless, it remains the "Court's duty to engage in an expedient and reasonable determination of appropriate and restitution by resolving uncertainties with a view toward achieving fairness to the victim." *Whitley*, 354 F.Supp.3d at 933 (internal quotations omitted). If the government's restitution calculation does not account for matters that concern the court, it can adjust the amount and explain its reasons for doing so. *United States v. Dillard*, 891 F.3d 151, 158, 161 (4th Cir. 2018). It is inherently difficult to quantify the losses sustained by minor victims in these cases, and "the resources often

available to the parties and the Court in a full blown trial are simply not available in this type of criminal proceeding." *United States v. Baker,* 672 F.Supp.2d 771, 777 (E.D. Tex. 2009).

In this case, the government has made continuing efforts to contact the victims' family members to seek their assistance in calculating restitution amounts. For the most part, these young victims are not yet aware (or fully aware) of the defendant's sexual exploitation of them, as most of his conduct took place while they were sleeping. Victims B, C, D, and E are still under 18, and their respective parents have chosen not to burden them with the knowledge of the full scope of defendant's conduct yet.[5] In the government's communications with the parents of Victims A, B, and C, however, the parents communicated that Victims A, B, and C may likely require significant therapy once they learn more about what defendant did to them. Victim A and B's mother relayed that she has required regular therapy herself since defendant's arrest.

For Victims A, B, and C, the government recommends that this Court impose restitution in the amount of $15,000 per victim for future medical costs. This number is supported by scientific research: In a 2011 study, the conservative average lifetime medical cost to a victim of child maltreatment was found to be $32,648 in short-term health care costs and $10,530 in long-term health care costs.[6] Courts have cited

---

[5] Victim A is now 19 years old. The government reached out to Victim A, but has not heard back. Based on conversations with Victim A's parents, the government understands that Victim A is not yet ready to learn the full scope of defendant's conduct.

relevant social science research and evidence to support restitution awards, noting that such evidence indicates that "victims of childhood trauma, including sexual abuse and/or exploitation, are more likely to experience difficulties with substance abuse, obesity, high level promiscuity, depression, anxiety, posttraumatic stress disorder, medical diseases, and relational problems later in life." *United States v. Bour*, No. 2:13-CR-35, 2015 WL 58761, at *6 (N.D. Ind. Jan. 5, 2015); *see also Whitley*, 354 F.Supp.3d at 935; *Baker,* 672 F.Supp.2d at 774.

Moreover, this number is supported by considering the factors laid out in *Paroline v. United States*, 572 U.S. 434 (2014), which the Supreme Court made clear district courts "might consider" but are not required to do so:

> These [factors] could include the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id.* at 460. Defendant was the producer of the images and videos of Victims A, B, and C. He masturbated on and around these children as they slept, and, in the case of Victim B, he fondled her vagina and buttocks. He distributed the videos of Victims B

---

[6] Xiangming Fang, Derek S. Brown, Curtis S. Florence, & James A. Mercy, *The Economic Burden of Child Maltreatment in the United States and Implications for Prevention*, 36 CHILD ABUSE & NEGLECT 156, 161 (2012). This study is attached as Sentencing Exhibit 1.

and C to other men online, thus ensuring their further victimization. Victims A and B lived with defendant and trusted him not to sexually molest or exploit them as they slept. His obsession with Victim A led him to masturbate all over her belongings and photos, to take incessant "creepshots" of her clothed groin and buttocks, and to distribute her (non-child pornography) photos all over the Internet.

The $15,000 for future medical costs is a modest, conservative estimate when viewed in light of other cases ordering restitution for victims of child pornography producers. *See, e.g., United States v. Dillard*, 891 F.3d 151, 155 (4th Cir. 2018) (affirming award of $100,000 in restitution for future harms awarded to contact victim of child pornographer); *Baker,* 672 F.Supp.2d at 780 (E.D. Tex. 2009) (awarding $150,000 for future treatment costs to each of three victims whose father produced child pornography depicting 5 and 6 year olds and an infant); *United States v. Padilla*, 2018 WL 4365494, at *2 (D. Idaho Sept. 13, 2018) (awarding $30,000 in restitution for future health care treatment in child pornography production case); *United States v. DeHate*, 2016 WL 3549349, at *7 (E.D. Mich. Jun. 30, 2016) (awarding $40,560 in restitution for future treatment costs in child pornography production case); *Bour*, 2015 WL 58761, at *7 (awarding $50,000 per victim for medical treatment where defendant committed "exceedingly horrific and shocking" sexual abuse of young children and producing child pornography); *United States v. Miller*, 2015 WL 6689363, at *2 (E.D. Mich. Nov. 3, 2015) (awarding $210,300 each to two victims of child pornography producer, who was their grandfather).

21

The defendant also produced a video in which he used Victims D and E (his girlfriend's young niece and nephew) for sexual exploitation by openly masturbating in the same room as them. For Victims D and E, the government seeks a smaller restitution award of $3,000 each. Law enforcement recovered only one video depicting Victims D and E on defendant's devices, and defendant did not molest or ejaculate on either of them in the video. Victims D and E were approximately eight and two years old, respectively, at the time defendant made the video, and did not appear aware of defendant's conduct on video. There is no evidence that defendant distributed this video to others. Based on a review of the *Paroline* factors, the government believes that a $3,000 award for Victims D and E is appropriate in this case.

### C. Possession Victims

As discussed in Section I.C above, defendant also possessed at least 1300 images and videos depicting the sexual exploitation of children whom he had never met. Seven of the child victims depicted in these images and videos have been identified by law enforcement and are seeking restitution from defendant. Several of these victims have provided victim impact statements explaining the unspeakable horrors they endured in order to satisfy the demand of the defendant and others for these images. The victims' words convey not just what was done to them to produce the images that the defendant sought out, but also present the stark reality of the unimaginable pain and the profound psychological scars that they will carry with them for the rest of their lives.

For example, one identified victim explained in her victim impact statement that she suffers from depression, PTSD, and paranoia. *See* PSR, "Chelsea" Exhibit, Victim Impact Statement, p. 1. She fears that men she sees in public have seen her abuse, and she has nightmares of being raped by the men who watched videos of her. *Id.* Another identified victim relayed that she lives in fear that someone will recognize her from the photos of her abuse, and that she wishes every one of the photos could be destroyed. *See* PSR, "Jenny" Exhibit, Victim Impact Statement. A third identified victim stated, "I have to deal with this on a daily basis. Nobody whose images of their rape and torture are on the Internet can live normally again." *See* PSR, "Maureen" Exhibit, Victim Impact Statement, p. 1. The identified victims from defendant's collection of child pornography include:

- "Henley," who was abused from ages 5 through 12, seeking $5,000

- "Fiona," who was abused at age 6,  seeking no less than $3,000

- "Chelsea," who was abused at age from ages 9 through 11, seeking $10,000

- "Jenny," who was abused from ages 7 through 9, seeking no less than $3,000

- "Pia," who was abused from ages 4 through 5, seeking $5,000

- "Maureen," who was abused from ages 6 through 7, seeking $10,000

The government submitted directly to the Court the submissions of each of these victims in support of their restitution requests, including victim impact statements, forensic evaluations, and estimates for the future medical and psychiatric needs of the these victims.  As discussed above, defendant was not the individual who directly abused these victims, but he contributed to and perpetuated

their victimization by knowingly entering into the market for child pornography and downloading images of their abuse for his own gratification. Defendant's conduct of seeking and downloading these images and videos fed the demand that causes people around the world to continue to victimize innocent children by making images and videos of their exploitation. As detailed in the victims' submissions, their future medical and psychiatric needs are all generally well in excess of $100,000. The government seeks $5,000 in restitution for each of these victims from this defendant, who possessed and used images and videos of their rape for his own gratification. The government believes that this amount is proportional and appropriate in light of defendant's relative role in their victimization.

Similarly, because defendant received videos depicting the sexual exploitation of Victim F from McCarthy (as described in Section I.D. above), but did not personally produce the videos, the government seeks $5,000 in restitution for Victim F from this defendant. Although, unlike the child victims described above, Victim F was (thankfully) not raped in the course of the video that McCarthy sent to defendant, defendant had a stronger relative role in Victim F's victimization than the child victims he did not know: He communicated with McCarthy about masturbating around Victim F, told him to "wash his cock" in Victim F's water bottle, and received "creepshots" from McCarthy of Victim F, focused on her bikinis, clothed groin, and clothed buttocks.

## V.    SUPERVISED RELEASE

Consistent with Probation's recommendation, the government recommends the imposition of a term of supervised release of ten years on each count, to run

concurrently. In order to promote the sentencing objectives of deterring recidivism, protecting the public, and assisting in defendant's rehabilitation and reintegration into society, the government supports Probation's recommendation that the term of supervised release include the conditions set forth in the PSR.

The government requests that, in addition to the persons already named in Discretionary Condition 6, the Court order that the defendant shall not knowingly meet or communicate with Individual B, Individual C, Victims C, D, E, or F.

## VI. CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court sentence defendant to 50 years' imprisonment, which is the Sentencing Guidelines range. This sentence reflects the serious nature of the offense and the history and circumstances of the defendant, but is not greater than necessary to reflect the goals of sentencing espoused in 18 U.S.C. § 3553.

Dated: August 15, 2019         Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By:    */s/ Kelly M. Greening*
KELLY M. GREENING
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-4095

25

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ADAM SPRENGER

18 CR 105

Honorable John J. Tharp, Jr

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed.R.Crim.P. 49, Fed.R.Civ.P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following document:

## GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS

was served pursuant to the district court's ECF system.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By:     */s/ Kelly M. Greening*
KELLY M. GREENING
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois  60604
(312) 353-4095

Dated:     August 15, 2019