1

```
 1                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3
    UNITED STATES OF AMERICA,        )
 4                                   )
                       Plaintiff,    )
 5                                   )
                                     )
 6  -vs-                             )  Case No. 18 CR 105
                                     )
 7                                   )  Chicago, Illinois
    ADAM SPRENGER,                   )  February 15, 2019
 8                                   )  10:01 a.m.
                       Defendant.    )
 9

10                   TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JOHN J. THARP, JR.
11
    APPEARANCES:
12
    For the Plaintiff:     UNITED STATES ATTORNEY'S OFFICE
13                         BY:  MS. KELLY MATTEA GREENING
                           219 S. Dearborn Street
14                         Suite 500
                           Chicago, IL  60604
15
    For the Defendant:     THOMAS C. BRANDSTRADER, ATTORNEY AT LAW
16                         BY:  MR. THOMAS C. BRANDSTRADER
                           53 W. Jackson Boulevard
17                         Suite 618
                           Chicago, IL  60604
18
                           LAW OFFICE OF ANDREW GABLE
19                         BY:  MR. ANDREW S. GABLE
                           53 W. Jackson Boulevard
20                         Suite 863
                           Chicago, IL  60604
21

22  Court Reporter:        KELLY M. FITZGERALD, CSR, RMR, CRR
                           Official Court Reporter
23                         United States District Court
                           219 South Dearborn Street, Room 1420
24                         Chicago, Illinois  60604
                           Telephone:  (312) 818-6626
25                         kmftranscripts@gmail.com
```

1    (Proceedings heard in open court:)

2              THE CLERK:  U.S.A. v. Sprenger, 18 CR 105.

3              MS. GREENING:  Good morning, Your Honor.  Kelly

4    Greening on behalf of the United States.

5              MR. BRANDSTRADER:  Good morning, Judge.  Thomas

6    Brandstrader, B-r-a-n-d-s-t-r-a-d-e-r, for Mr. Sprenger who is

7    to my left.

8              THE COURT:  Good morning.

9              Good morning, Mr. Sprenger.

10             THE DEFENDANT:  Good morning, Your Honor.

11             THE COURT:  All right.  We're here for a change of

12   plea hearing.

13             Ready to go forward?

14             MR. BRANDSTRADER:  Yes, Judge.

15             THE COURT:  Mr. Sprenger, we're going to go through a

16   process here this morning that is required in order for me to

17   make certain determinations that I must make in order to

18   accept a plea of guilty to any of the charges that you're

19   facing in this case.  In order to go through this process, I'm

20   going to have to ask you quite a few questions here this

21   morning.  It's important that you understand the questions and

22   you answer the questions truthfully and accurately because I

23   need your truthful and accurate answers in order to make the

24   determinations that I need to make as to whether I can accept

25   a plea of guilty.

1        You also need to answer these questions truthfully

2   and accurately because you're going to be put under oath, and

3   it can be a crime to answer or provide false information in

4   response to my questions.  So you don't want to do that.

5        And, third, it's important to understand that the

6   answers that you give me to these questions will be used

7   against you because this process, if I end up accepting your

8   plea of guilty, will result in my entry of an order finding

9   you guilty of the crime based on this hearing today.

10       So when I ask you these questions, if you need

11  clarification, you don't understand something, you need to

12  speak up, let your lawyer know.  If you want to just -- if you

13  understand the question but you think you need to talk to your

14  lawyer before responding, just let him know that, and I'll

15  give you the opportunity to do that.  All right?

16            THE DEFENDANT:  Yes, Your Honor.

17            THE COURT:  All right.

18            Ms. Rone, would you please swear in Mr. Sprenger.

19     (Defendant sworn.)

20            THE COURT:  All right.  Mr. Sprenger, what's your

21  full name?

22            THE DEFENDANT:  Adam Westin Sprenger.

23            THE COURT:  All right.  And how old are you, sir?

24            THE DEFENDANT:  37.

25            THE COURT:  And before you were taken into custody,

1    what city did you live in?

2              THE DEFENDANT:  Arlington Heights.

3              THE COURT:  Have you lived in the Chicago

4    metropolitan area for quite some time?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Are you married?

7              THE DEFENDANT:  No.

8              THE COURT:  Do you have children?

9              THE DEFENDANT:  No.

10             THE COURT:  What's the highest level of formal

11   education you have completed?

12             THE DEFENDANT:  Graduated high school.

13             THE COURT:  Okay.  And so I take it you're able to

14   read and write English?

15             THE DEFENDANT:  Yes.

16             THE COURT:  All right.  Before you were taken into

17   custody, were you employed?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Doing what kind of work?

20             THE DEFENDANT:  I was an Uber driver, and I was

21   working at a restaurant.

22             THE COURT:  Were you food preparation, server?

23             THE DEFENDANT:  Server.

24             THE COURT:  Do you feel like you're in good physical

25   health?

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  Are you presently taking any prescription

3 medications of any sort?

4        THE DEFENDANT:  Yes, Your Honor.

5        THE COURT:  What sort of medications?

6        THE DEFENDANT:  Gabapentin for nerves and Prozac.

7        THE COURT:  Okay.  And are those being prescribed by

8 a mental health professional?

9        THE DEFENDANT:  Yes.

10        THE COURT:  All right.  And you're periodically

11 consulting with that professional, I take it?

12        THE DEFENDANT:  Yes, Your Honor.

13        THE COURT:  Okay.  Do the medicines that have been

14 prescribed for you interfere in any way with your ability to

15 think clearly?

16        THE DEFENDANT:  No, sir.

17        THE COURT:  Do they affect your judgment in any way?

18        THE DEFENDANT:  No, sir.

19        THE COURT:  All right.  Do you feel that they prevent

20 you or that you should not make very important decisions while

21 you're taking that medication?

22        THE DEFENDANT:  No, Your Honor.

23        THE COURT:  In fact, do you find that medication is

24 actually beneficial to your ability to function normally?

25        THE DEFENDANT:  Yes.

1      THE COURT:  Other than the mental health medications,

2  are you on any other prescription medications?

3      THE DEFENDANT:  No, Your Honor.

4      THE COURT:  Other than the mental health medications,

5  have you had any other drugs or alcohol in the last 24 hours?

6      THE DEFENDANT:  No.

7      THE COURT:  Is there any reason that you don't feel

8  capable mentally or physically this morning from going forward

9  with this hearing?

10      THE DEFENDANT:  No, Your Honor.

11      THE COURT:  All right.

12      Mr. Brandstrader, do you have any reason to doubt

13  Mr. Sprenger's competence to enter a plea of guilty?

14      MR. BRANDSTRADER:  No objection.

15      THE COURT:  Ms. Greening?

16      MS. GREENING:  No, Your Honor.

17      THE COURT:  All right.  I do find that Mr. Sprenger

18  is competent to enter a plea of guilty based not only on the

19  substance of his responses to the Court's questions but also

20  his demeanor and attentiveness here in court.  It's clear to

21  the Court that he understands the questions and the nature of

22  the proceeding and is responding appropriately.

23      Mr. Sprenger, who is the attorney who has been

24  representing you in this case?

25      THE DEFENDANT:  Mr. Brandstrader.

1      THE COURT:  All right.  Have you had enough time to

2  talk to Mr. Brandstrader about this case generally?

3      THE DEFENDANT:  Yes, Your Honor.

4      THE COURT:  Have you had enough time to talk with him

5  more specifically about what we're doing here this morning?

6      THE DEFENDANT:  Yes, Your Honor.

7      THE COURT:  Pleading guilty to some of these charges?

8      THE DEFENDANT:  Yes, Your Honor.

9      THE COURT:  Are you satisfied with the advice and

10  counsel that Mr. Brandstrader has given you in the course of

11  his representation?

12      THE DEFENDANT:  Yes, Your Honor.

13      THE COURT:  Is there anything you think he should

14  have done for you as your attorney that he has not done for

15  you?

16      THE DEFENDANT:  No, sir.

17      THE COURT:  All right.  I'm sure Mr. Brandstrader has

18  talked to you about what it means to plead guilty and the

19  rights that you will be giving up by pleading guilty, but we

20  need to make this a matter of record to be sure that you

21  understand that going through this process, if I accept your

22  guilty plea, you will have surrendered and waived very

23  important significant rights that you would otherwise have.

24  And everything I'm going to talk to you about starts with the

25  fundamental proposition that even though you're in custody

1  now, even though you're facing criminal charges, under the

2  law, you are presumed to be not guilty of those charges.  What

3  that means is you have no burden to prove that you are not

4  guilty.  The law presumes that you are not guilty, and it

5  places the burden of proof on the government.  Do you

6  understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  So the government must prove that you are

9  guilty, and they must do that by presenting evidence that is

10  sufficient to prove you guilty beyond a reasonable doubt.

11  That's what the government's burden is.  Do you understand

12  that?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Okay.  And the way that the -- that we

15  would go about assessing whether the government's evidence

16  would prove you guilty beyond a reasonable doubt is we would

17  have a trial, a jury trial in all likelihood.  You have an

18  absolute right to have a trial by jury.  Do you understand a

19  jury is just a group of citizens who have been called to

20  listen to the evidence and the instructions of law that apply

21  in a case and decide, make that decision of whether the

22  evidence proves you guilty of an offense beyond a reasonable

23  doubt?  That's what a jury is.  Do you understand that?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Okay.  Now, if we had a trial, it would

1    be in a public courtroom, probably this one since this case is

2    assigned to me.  You have the right to counsel throughout the

3    trial, and that public trial, the government can't take you

4    and haul you off somewhere and try you in secret.  It would

5    take place in a public courtroom where friends, family, media,

6    anybody else who was interested in the case would have the

7    opportunity to observe the proceedings.  Do you understand

8    that?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Okay.  Now, during -- the trial would

11   begin with the selection of the jury, and you and your

12   attorney would play a very big role in determining who gets to

13   sit on that jury for several reasons.  We would call a group

14   of people in, probably 40 people, maybe more than that, in as

15   possible jurors, and we would question those folks and get

16   information from them in order to determine whether they could

17   be fair and impartial jurors in this particular case.  Your

18   lawyer would get to have a very big part in that because he

19   would submit questions to the Court that we would ask these

20   people to determine what kind of information we were going to

21   get from them.  In some cases he may even be able to question

22   jurors directly himself.

23             Based on the information that we get from those

24   jurors, if you and your attorney thought someone on the basis

25   of the information we have about them would not be a fair and

1    impartial juror, Mr. Brandstrader could make what are called

2    challenges for cause, which are just objections that say,

3    Judge, this person isn't going to be fair and impartial; they

4    should not be permitted to sit as a juror in this case.  And

5    if I agreed with those objections, I would strike that

6    individual, and they would not be permitted to be part of the

7    jury.  Do you understand that?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  The other thing to understand about

10   challenges for cause is there's no limit to the number of

11   challenges for cause that you and your attorney could make.

12   If we brought 40 people in and Mr. Brandstrader thought that

13   half of them weren't going to be fair and impartial, he could

14   make, you know, 20 challenges for cause.  He could make 40 if

15   he thought no one would be fair and impartial.  The odds are I

16   wouldn't agree with all of those challenges, but if I did, we

17   would have to bring more people in until we got a jury

18   consisting of 12 people who could be fair and impartial

19   jurors.  Do you understand that?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Okay.  Now, there's another kind of

22   challenge that you would be able to make in the course of jury

23   selection, and that's called a peremptory challenge.  And a

24   peremptory challenge is even more powerful than a challenge

25   for cause because you can exercise a peremptory challenge to

1    strike people from the jury pool for almost any reason at all.

2    The only reason you can't use a peremptory challenge to strike

3    someone is if you're doing so on an unconstitutional basis,

4    meaning you can't strike someone with a peremptory challenge

5    because of their race or their religion or their gender or

6    their national origin, for example.  There's probably several

7    other categories, but apart from those unconstitutional

8    reasons, you can use a peremptory challenge to strike someone

9    for any other reason at all.  You just think somebody has got

10   a bad attitude based on their demeanor or their responses,

11   they don't want to be here, they don't want to give up a week

12   or more of their life to sit on the jury in this case, or you

13   think there's something going on in their life, they're

14   distracted, their spouse is in the hospital or something and

15   they're not going to pay attention, you think they're too

16   dumb, you think they're too smart, too rich, too poor,

17   anything other than those unconstitutional reasons, you can

18   use a peremptory challenge to strike someone.  Do you

19   understand that?

20            THE DEFENDANT:  Yes, Your Honor.

21            THE COURT:  Okay.  Because they're so powerful, you

22   don't get -- unlike challenges for cause, you don't get an

23   unlimited number of peremptory challenges, but you would have

24   at least ten to exercise in picking the jury.  So if we had 40

25   people in here and you could strike ten of them for almost any

1    reason at all, that would wipe out 25 percent of the jury pool

2    right there, and I would have essentially nothing to say about

3    that.  Do you understand that?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Okay.  So between peremptory challenges

6    and challenges for cause and participating in the questioning

7    of the jurors, that's why I say you and Mr. Brandstrader would

8    play a very big role in ultimately deciding who gets to sit on

9    the jury.  Do you understand that?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Okay.  Once we pick the jury, then it

12   would be the government's -- that would be the point the

13   government has to present its evidence.  They would do that by

14   calling witnesses, by presenting tangible items of evidence if

15   there were documents.  This case may involve photographs,

16   videos, things like that.  The government has the right to

17   present that evidence.  What is important for you to

18   understand is your attorney has the right to challenge the

19   introduction of any of that evidence if there's some legal

20   basis to say the jury shouldn't be permitted to consider that

21   evidence.  And I would listen to those challenges, and I would

22   rule on those challenges.  Do you understand you have the

23   right to challenge the government's introduction of evidence?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  All right.  The other way you could

1    challenge the government's evidence is through

2    cross-examination of the witnesses that the government calls.

3    Any witness the government calls and questions during the

4    trial your attorney has the right to cross-examine.  It just

5    means to ask questions himself of those witnesses.  Do you

6    understand that?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Now, once the government presented its

9    evidence, as the defendant in the case, you have the right,

10   but not the obligation, to present any evidence that you think

11   might help convince the jury that you're not guilty.  You

12   don't have to present evidence because as I told you at the

13   outset, you don't have a burden of proof.  The government has

14   the burden of proof.  But if you have evidence that you think

15   would help convince the jury that you're not guilty, you have

16   the right to present that evidence under the same rules and

17   procedures that the government presents its evidence.  Do you

18   understand that?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Okay.  There's another kind of evidence

21   that you can -- you have the right to present if you wish, and

22   that's your own testimony.  During the trial, you would have

23   the right to testify in your own defense if you chose to do

24   so.  You would also have the right not to testify if that was

25   your decision.  Do you understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  Now, a couple of things to

3    understand about that.

4          First, the decision about whether to testify or not

5    testify in the case is a decision that no one can make for

6    you.  That is your decision to make.  Mr. Brandstrader is an

7    experienced attorney, and he would give you the benefit of his

8    experience and his counsel about whether he thought it was

9    wise for you to testify in the case or not.  But at the end of

10   the day, if you disagree with him, it's your decision to make,

11   not his.  Do you understand that?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  All right.  Now, in making that decision,

14   if you decided at the -- that you wanted to testify, the jury

15   would be instructed that they should consider your testimony

16   just like the testimony of any other witness in the trial, and

17   you would be subject to cross-examination just like any other

18   witness at trial.  Do you understand that?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Okay.  On the other hand, if you decided

21   not to testify, the jury would be instructed that they can't

22   hold that decision against you or use that decision against

23   you in any way, meaning they can't think to themselves or say

24   to each other you know what?  If Mr. Sprenger is not guilty of

25   these charges, he would have taken the witness stand, taken an

1    oath, and he would have told us he was not guilty.  They can't

2    do that.  Do you understand that?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  And they will be told they can't do that.

5    In fact, they will be told and instructed as a matter of law

6    they can't even discuss the fact that the defendant chose not

7    to testify if that was your decision.  Do you understand that?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  Okay.  The other thing I want to make

10   sure you understand about the evidence in the case is both

11   sides, the government and the defense, have the right to issue

12   what are called trial subpoenas.  And those are just court

13   orders that if you thought, for example, that there was some

14   witness out there who could testify and would be of benefit to

15   your defense but they weren't willing to come in and testify

16   voluntarily, Mr. Brandstrader could issue a trial subpoena

17   which I would enforce that would require that individual to

18   come in and testify or require an individual to come in and

19   produce physical evidence that they might have in their

20   possession.  Do you understand you have the right to issue

21   trial subpoenas?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  Okay.  Now, once all of the evidence in

24   the case had been presented, the lawyers would make their

25   closing arguments, and then it would be time for the jury to

1   deliberate, meaning they would be instructed on the law that

2   applies to the charges in the case.  They would go back to the

3   jury room, and they would consider the evidence that was

4   presented at trial and make the determination of whether that

5   evidence was sufficient to prove you guilty of any of the

6   charges beyond a reasonable doubt.  And the important thing to

7   understand about the jury and its deliberations is in order to

8   come back into the courtroom and say we have a verdict and we

9   find Mr. Sprenger guilty of any charge, the jury would have to

10  unanimously agree that the evidence was sufficient to prove

11  you guilty of that charge beyond a reasonable doubt.  So if

12  even one juror was not convinced beyond a reasonable doubt,

13  the jury could not bring a verdict back against you.  Do you

14  understand that?

15            THE DEFENDANT:  Yes, Your Honor.

16            THE COURT:  There are no 7-5 or 11-1 verdicts in

17  criminal cases in federal court.  Do you understand that?

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  Now, let's say for the sake of discussion

20  that we had a jury trial and the jury came back with a verdict

21  of guilty on one or more of the charges that you're facing.

22  At that point, even at that point, your rights would not be

23  over because you have the right to appeal the jury's verdict.

24  You have the right to counsel to help you with that appeal,

25  which means that you have the right to make arguments to the

1   Court of Appeals that something improper happened during the

2   trial, that you didn't get a fair trial, or maybe that even

3   just that the evidence wasn't sufficient to prove you guilty

4   beyond a reasonable doubt.

5           You have the right to a lawyer to help you make those

6   arguments, and if the Court of Appeals agrees that you didn't

7   get a fair trial, they might order another trial to be held.

8   You go back to square one.  If there were certain mistakes or

9   errors made during the course of a trial, they might even

10  decide the indictment has to be dismissed; this man can't be

11  retried, and he must be acquitted.  That doesn't happen very

12  often, but that's possible relief that you can get on an

13  appeal.  Do you understand that?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  You understand when we conclude this

16  process this morning, if I accept your guilty plea, none of

17  that is going to happen.  You understand that?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  All right.  And because we're not going

20  to have a trial, there's not going to be any trial errors to

21  appeal from.  So in pleading guilty, you're limiting the scope

22  of any of appeal that you might be able to make at the

23  conclusion of this case.  Do you understand that?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  The only thing you would be able to

1   appeal from this case would be what we're doing now, the

2   process we're going through now, and whatever sentence might

3   get imposed ultimately in the case.  Do you understand that?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Okay.  Now, what I've just described to

6   you is a jury trial.  There's another kind of trial I have to

7   tell you about, and that's called a bench trial.  And a bench

8   trial operates with one major exception just like a jury

9   trial, and that exception is in a bench trial, we don't pick a

10  jury.  We don't have a group of 12 people listening to the

11  evidence and making the determination about the adequacy of

12  the evidence.  In a bench trial, the judge that presides over

13  the case does that.

14         You don't have a right to a bench trial; you have the

15  right to ask for a bench trial if that's how you wanted to

16  resolve the charges against you.  And if you asked for a bench

17  trial, the government -- the government has to agree to a

18  bench trial.  They could object.  The judge also has to agree.

19  But if all of those parties were in agreement, then there

20  could be a bench trial, and the charges could be resolved in

21  that manner.  Do you understand that?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Okay.  All right.

24         Do we have the plea agreement?

25         MS. GREENING:  Yes, Your Honor.

1      THE COURT:  Could you give that to Mr. Brandstrader?

2      MS. GREENING:  Yes.

3      THE COURT:  Mr. Brandstrader, would you show

4  Mr. Sprenger the last page of that plea agreement.

5      All right.  Mr. Sprenger, is that your signature

6  above your typewritten name?

7      THE DEFENDANT:  Yes, Your Honor.

8      THE COURT:  All right.  Now, before you signed that

9  plea agreement, did you have an adequate opportunity to review

10  it?

11      THE DEFENDANT:  Yes, Your Honor.

12      THE COURT:  Did you have enough time to discuss it

13  with your lawyer?

14      THE DEFENDANT:  Yes, Your Honor.

15      THE COURT:  Have any questions about that plea

16  agreement answered by your attorney?

17      THE DEFENDANT:  Ask that --

18      THE COURT:  Did you have enough time to have any

19  questions you had answered?

20      THE DEFENDANT:  Yes, Your Honor.

21      THE COURT:  Do you have any lingering questions about

22  what's in that plea agreement or anything that it provides?

23      THE DEFENDANT:  No, Your Honor.

24      THE COURT:  All right.  Did you sign that plea

25  agreement voluntarily?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Did anyone force you to sign that plea

3    agreement?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  All right.  Now, you understand in that

6    plea agreement that you are making an agreement, really a

7    contract with the government, and part of your performance of

8    that contract is to plead guilty to Count One and -- or excuse

9    me --

10         MS. GREENING:  Counts One and Four, Your Honor.

11         THE COURT:  One and Four.

12         MS. GREENING:  And there's also a stipulated offense,

13   which is Count Two.

14         THE COURT:  Okay.

15         So you are agreeing to plead guilty to Count One and

16   Count Four of the indictment.  And you've admitted facts that

17   are the basis for the charge that is reflected in Count Two of

18   the indictment, but you're not technically pleading guilty to

19   that count.  Do you understand that?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  All right.  And do you understand that,

22   again, if we get to the end of this process and I accept your

23   plea of guilty and I find you guilty of the charge that you

24   could be sentenced to -- up to the maximum penalties that are

25   provided by law for convictions on the charge set forth in

1    Count One and the charge set forth in Count Four?  Do you
2    understand that?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  All right.  I want to make sure you
5    understand what those maximum penalties are.

6           Count One, which charges a violation of 18 U.S.C. §
7    2251A, which says that you knowingly employed and used a minor
8    to engage in sexually explicit conduct for the purpose of
9    producing a visual depiction of such conduct, a conviction on
10   that crime carries a maximum sentence of 30 years of
11   imprisonment and a mandatory minimum sentence of 15 years of
12   imprisonment.  Do you understand that?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  All right.  In addition to a term of
15   imprisonment between 15 and 30 years, there's also a maximum
16   fine that can be imposed in addition to the term of
17   imprisonment of up to $250,000.  Do you understand that?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  In addition to the term of imprisonment
20   and a fine, there's also a term of what's called supervised
21   release that could be imposed after your term of imprisonment
22   concludes.  And that term of supervised release has to be at
23   least five years and could be for the rest of your life.  Do
24   you understand that?

25          THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  And on top of all of that, I have to

2  impose what's called a special assessment of $100 on each

3  count of conviction.  So on top of all of the other stuff on

4  Count One, there would be that special assessment.  Do you

5  understand that?

6    THE DEFENDANT:  Yes, Your Honor.

7    THE COURT:  Now, with respect to Count Four of the

8  indictment, which charges you with a violation of Title 18 of

9  the United States Code, Section 2252A(a)(5)(B), which the

10  essence of which is the knowing possession of material that

11  contained images of child pornography, including images that

12  involved prepubescent minors and minors who had not reached

13  the age of 12 years, the penalties that could be imposed for a

14  conviction under that count include a term of imprisonment of

15  up to 20 years, a maximum fine of up to $250,000, a period of

16  supervised release of at least five years and up to life, and,

17  again, a special assessment of $100.  Do you understand that?

18    THE DEFENDANT:  Yes, Your Honor.

19    THE COURT:  All right.

20    Ms. Greening, any questions about the maximum

21  penalties as I've recited them of which I'm relying on the

22  plea agreement?

23    MS. GREENING:  No, Your Honor.  Just paragraph 7,

24  subparagraph f outlines a statute that's specific to this

25  particular type of crime, which is Title 18, United States

1   Code, Section 3014 indicating that the defendant would be

2   assessed an additional $5,000 per count of conviction if the

3   Court determines at sentencing that he is a nonindigent

4   person.

5          THE COURT:  Okay.  So that would be part of the

6   maximum penalties as well, this fine of $5,000.  Is that just

7   on Count One?

8          MS. GREENING:  It's each count, Your Honor.

9          THE COURT:  Each count.  So there would be at least a

10  $10,000 fine that could be imposed if I conclude that you're

11  not indigent.  Do you understand that?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  And also you should be aware, on top of

14  everything that I've just described to you, that it's

15  mandatory that restitution be awarded in this case in some

16  amount.  Do you understand that?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  All right.  Now, I gave you the maximum

19  penalties that could be imposed on each count of conviction.

20  I gave you those penalties separately.  But do you understand

21  that because you're pleading guilty to both counts, those

22  penalties can be aggregated and for the maximum penalty are

23  aggregated so that the maximum penalty that you can ultimately

24  face in this case is a sentence of up to 50 years'

25  imprisonment, a minimum sentence of 15 years, a maximum fine

1    of up to $500,000, a period of supervised release of at least

2    five years and special assessments totaling $200 in addition

3    to the restitution and the $10,000 fine that we just talked

4    about.  Do you understand that?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  All right.  Now, those are the maximum

7    penalties.  That doesn't mean those are the penalties that

8    will be imposed.  We don't know what -- the penalties that

9    will be imposed, what the sentence in this case will be at

10   this point because I don't have the information necessary to

11   make the judgment about the appropriate sentence at this

12   point.  Do you understand there's not going to be a sentence

13   imposed today?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Okay.  We have to go through a process to

16   get me the information that I need in order to determine the

17   appropriate sentence.  The way we do that is through the

18   preparation of what's called a presentence investigation

19   report.  That's a report that's compiled by the probation

20   office that gives me information about you, your background,

21   your education, your health, your financial situation, your

22   childhood, your employment history, any criminal history,

23   things like that.  It also gives me information about the

24   offenses that you've pled guilty to, and it also provides a

25   preliminary calculation of the advisory sentencing guideline

1       range that is applicable in this case.

2               Have you had a chance to talk with Mr. Brandstrader

3       generally about the sentencing guidelines and the role that

4       they play in sentencing?

5               THE DEFENDANT:  I have, Your Honor.

6               THE COURT:  A couple of things I want to make sure

7       that you understand about the guidelines.

8               The guidelines, I am required to calculate the

9       advisory sentence under the guidelines, and I am required to

10      make that calculation and to consider that calculation as a

11      factor in deciding the sentence to impose.  But I am not

12      required to impose the sentence that is suggested by the

13      guidelines.  Do you understand that?

14              THE DEFENDANT:  Yes, Your Honor.

15              THE COURT:  I may decide -- the guidelines, in other

16      words, are one factor among many factors that I'm required to

17      consider in assessing the appropriate sentence.  I might

18      decide the guideline range is just right.  I might decide, for

19      whatever reason, that it's too high.  I might also decide it's

20      too low.  And so at this point, you could -- you know, I have

21      the discretion to sentence you to anything up to those maximum

22      penalties that I've described.  Do you understand that?

23              THE DEFENDANT:  Yes, Your Honor.

24              THE COURT:  All right.  Now, we don't know what the

25      advisory sentencing guideline is going to be yet because I

1    need to get that presentence investigation report.  Your

2    lawyer and the government need the opportunity to review that

3    report and comment on it, and then I have to review it and

4    consider their comments and ultimately make the decision about

5    what the advisory guideline range is.  But as it stands right

6    now, the government and Mr. Brandstrader have some idea of

7    what they think the guideline range will be.  And so it's

8    important I think to consider and understand before you plead

9    guilty what that range may be because I am required to take

10   the range into account.

11            So, Ms. Greening, what is the government's

12   preliminary view as to what the guideline calculation in this

13   case will yield?

14            MS. GREENING:  Your Honor, the anticipated total

15   offense level is 43, which when combined with the anticipated

16   criminal history category of I results in a sentencing

17   guidelines range of life imprisonment.  But because the

18   statutorily authorized maximum sentence is 50 years under

19   guideline 5G1.1(a), the guideline sentence would be 50 years'

20   imprisonment.

21            THE COURT:  All right.

22            And, Mr. Brandstrader, are there issues that would

23   affect the guideline calculation that you believe at this

24   point will be in dispute?

25            MR. BRANDSTRADER:  Yes, Judge, there will be one or

1    two enhancements.  Obviously we have to wait to see how the

2    probation department looks at it before we file anything.  But

3    I understand the preliminary calculations, Judge, and I'm not

4    going to lodge an objection today, but we're not in total

5    agreement with them.

6              THE COURT:  Okay.

7              So, Mr. Sprenger, there may be some disputes about

8    the calculation of the guideline range.  Those won't get

9    resolved ultimately until the sentencing hearing in this case

10   that takes place a number of months down the road.  But at

11   this point, the government thinks the sentence is going to

12   be -- the guideline range sentence is going to be 50 years in

13   prison.  Do you understand that?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  If that's the guideline range that I

16   determine, I have to take that into account, but, again,

17   that's only advisory.  It's not binding on the Court.  Do you

18   understand that?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  All right.  Now, the sentence that is

21   imposed in this case is obviously the most significant

22   consequence to being convicted of these charges.  It's not the

23   only consequence, however, and I want to make sure that you

24   understand that.

25             Under the law, the law places various restrictions on

1    people who have been convicted of felonies apart from, you

2    know, whatever sentence is imposed in their case.  Common

3    examples are folks who have been convicted of felony offenses

4    lose their right to possess a firearm, may not be able to

5    vote, can't sit on a federal jury.  Those are common examples.

6    There are many, many restrictions like that that are imposed

7    by the federal government, by state governments, by city

8    governments.  There's way too many restrictions like that for

9    me to tell you about all of them.  But if you have concerns

10   about those kinds of restrictions, another one that you should

11   be cognizant of and be aware of is there are -- particularly

12   for folks who have been convicted of crimes of a sexual nature

13   that there are many restrictions that are placed on the civil

14   liberties of people who have those kinds of convictions even

15   after they've served any sentence that was imposed in the

16   case.  If you have any concerns about those kinds of

17   consequences, those need to be addressed and thought about and

18   considered before you enter a plea of guilty because once

19   you've entered a plea of guilty and I find you guilty and we

20   get to sentencing or after sentencing or sometime down the

21   road and you say, I didn't realize that I wasn't going to be

22   able to do this, or I was going to have to do this as a result

23   of these convictions, had I known that, I wouldn't have pled

24   guilty.  It's going to be too late to go back and undo that

25   plea.  You understand that?

1      THE DEFENDANT:  Yes, Your Honor.

2      THE COURT:  So if you have any questions along that

3  front, you need to research them and discuss them with your

4  attorney before pleading guilty.  Do you understand that?

5      THE DEFENDANT:  Yes, Your Honor.

6      THE COURT:  Okay.

7      We have no immigration consequences?

8      MR. BRANDSTRADER:  No, Judge.

9      THE COURT:  All right.

10     Now, one of the determinations I have to make, as I

11 mentioned at the outset, Mr. Sprenger, is I have to make -- in

12 order to accept your plea of guilty, I have to make a

13 determination that you are, in fact, guilty of the crimes that

14 you wish to plead guilty to.  You can't just plead guilty to a

15 crime in order to get a better deal.  In order to plead guilty

16 and have your plea accepted, I have to make a determination

17 that you are, in fact, guilty of those crimes.

18     Mr. Brandstrader, would you show Mr. Sprenger -- it

19 starts on page 2?

20     MS. GREENING:  Yes.

21     THE COURT:  On page 2 of the plea agreement, you see

22 the heading there that says about halfway down the page

23 "factual basis," Mr. Sprenger?

24     THE DEFENDANT:  Yes, Your Honor.

25     THE COURT:  All right.  And that factual basis

1   continues for several pages, all the way through about halfway

2   down the page on page 8.  Are you with me?

3        MR. BRANDSTRADER:  Yes, Judge.

4        THE COURT:  Okay.  Now, do you understand, again, in

5   this plea agreement that you've entered into with the

6   government that that factual basis is essentially a written

7   confession of why you're guilty of the charge in Count One,

8   why you're guilty of the charge in Count Four, and also

9   confesses to committing other conduct that will be considered

10  at sentencing in this case?  Do you understand that's the

11  nature of what that factual basis is?

12       THE DEFENDANT:  Yes, Your Honor.

13       THE COURT:  All right.  And understanding that's

14  essentially a written confession to conduct that will support

15  the convictions in this case, are you completely satisfied

16  that everything that is set forth in that factual stipulation

17  in the plea agreement is completely 100 percent accurate?

18       THE DEFENDANT:  Yes, Your Honor.

19       THE COURT:  Before you signed the plea agreement, did

20  you have the opportunity to go through that factual basis very

21  carefully?

22       THE DEFENDANT:  I did, Your Honor.

23       THE COURT:  And did you go through it very carefully?

24       THE DEFENDANT:  Yes, Your Honor.

25       THE COURT:  Along the way, before final izing the

1  plea agreement, did you have the opportunity to make changes

2  to that factual basis to correct anything that you thought was

3  not perfectly accurate?

4           THE DEFENDANT:  I didn't need to.

5           THE COURT:  All right.  But you had that opportunity?

6           THE DEFENDANT:  I did, yes.

7           THE COURT:  And you found from the get-go that it was

8  completely accurate?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  All right.  So you have no quibbles at

11  all with the factual statements that are made in that factual

12  basis?

13          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  All right.

15          Ms. Greening, I'm going to ask the government to

16  summarize, and that being the operative word in view of both

17  the length and specific nature of the statements that are

18  conceded and made by the defendant in the factual basis, I

19  would ask the government to provide a brief summary of what

20  its evidence at trial would consist of and show if this case

21  were to go to trial.

22          Mr. Sprenger, I want you to listen carefully to

23  Ms. Greening because when she's finished, I'm going to ask you

24  if anything she's told me you disagree with.

25          THE DEFENDANT:  Okay.

1          THE COURT:  Ms. Greening.

2          MS. GREENING:  With respect to Count One, the

3    government's evidence at trial would show that on or about

4    March 21, 2015, Mr. Sprenger traveled from Illinois to a hotel

5    in Wisconsin with individual A and her four minor children who

6    included victim A.  Victim A was 14 years old at the time.

7          The evidence would show that in that hotel room in

8    Wisconsin, on or about March 22nd of 2015, Mr. Sprenger used a

9    Samsung Galaxy cellular phone to take at least seven sexually

10   explicit photographs of victim A while she was sleeping.  The

11   photographs included sexually explicit conduct.

12         THE COURT:  And just to be clear, the sexually

13   explicit conduct was not of victim A but was of Mr. Sprenger,

14   correct?

15         MS. GREENING:  That's correct, Your Honor.

16         Mr. Sprenger, individual A, victim A and the other

17   minor children stayed at that hotel until the next day,

18   March 23rd of 2015, at which time they returned to Illinois.

19   He brought -- Mr. Sprenger brought with him back to Illinois

20   that Samsung Galaxy cellular phone that contained the sexually

21   explicit images.  He then stored those images to a USB drive

22   which he kept in his residence in Illinois.

23         Turning to Count Four, the evidence at trial would

24   show that Mr. Sprenger possessed approximately 64 images of

25   child pornography on a USB drive which was manufactured

1   outside of the United States; 66 images and 387 videos of

2   child pornography on a micro SD card which was manufactured

3   also outside of the United States, in the Philippines; 64

4   images of child pornography on an HP laptop computer which was

5   manufactured in China; and a second HP laptop computer.  The

6   images and videos of child pornography that Mr. Sprenger

7   possessed on these devices included images and videos of

8   children who were as young as toddlers and included

9   sadomasochistic conduct.  Each of these items were found in

10  Mr. Sprenger's home.

11         Turning to the facts that support Count Two, the

12  evidence at trial would show that on or about April 7th of

13  2017, Mr. Sprenger took four videos of victim B while victim B

14  was sleeping in the state of Illinois.  Victim B was 13 years

15  old at the time.  The videos included sexually explicit

16  conduct.  Mr. Sprenger then stored those four videos onto a

17  micro SB card which was manufactured in the Philippines.

18         On or about November 14th of 2017, Mr. Sprenger

19  communicated with an individual who, unbeknownst to

20  Mr. Sprenger, was an undercover law enforcement officer over

21  an application called Kik Messenger.  During that

22  communication, Mr. Sprenger and the UC, or the undercover law

23  enforcement officer, had a discussion about sexually explicit

24  conduct that Mr. Sprenger had engaged in, and Mr. Sprenger

25  then sent to the UC a video over Kik Messenger, specifically

1    video 4, which is the subject of Count Two.

2            THE COURT:  All right.

3            Mr. Sprenger, anything that Ms. Greening has told me

4    that you take issue with?

5            THE DEFENDANT:  No, sir.

6            THE COURT:  All right.

7            On the basis of Mr. Sprenger's responses to my

8    questions, the very detailed factual stipulation that is

9    included in the plea agreement and the government's proffer of

10   what its evidence at trial would show, I do find there is a

11   factual basis to support pleas of guilty to Count One and

12   Count Four of the indictment in this case.

13           All right.  The last thing we have to cover,

14   Mr. Sprenger, is I've asked you some of these questions in

15   relation to the plea agreement itself, but now I'm asking more

16   generally with respect to your decision to plead guilty.

17           Do you feel that anyone has forced you in any way to

18   plead guilty to any of these charges?

19           THE DEFENDANT:  No, Your Honor.

20           THE COURT:  All right.  Has anyone threatened you in

21   any way to -- threatened you or anyone you care about in any

22   way in order to coerce you in some fashion into pleading

23   guilty?

24           THE DEFENDANT:  No, Your Honor.

25           THE COURT:  Has anyone promised you anything -- well,

1    let me back up.

2           As I've already said, this plea agreement is a

3    contract between you and the government.  And it has

4    agreements the government has made; it has agreements that you

5    have made.  Putting any promises or agreements that are

6    included in the plea agreement to one side, has anyone

7    promised you anything else in order to induce you to plead

8    guilty to any of these charges?

9           THE DEFENDANT:  No, Your Honor.

10          THE COURT:  Has anyone promised you what your

11   sentence will be in this case?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  All right.  And you understand for the

14   reasons we've already talked about no one could possibly make

15   that promise to you because I'm going to be sentencing you,

16   and I don't have any idea what your sentence will be at this

17   point.  Do you understand that?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  All right.  You understand that the final

20   decision as to what your sentence will be rests with me, and

21   that I may sentence you to a longer period or a shorter period

22   than you may expect?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  All right.  Are you entering these pleas

25   voluntarily?

1      THE DEFENDANT:  Yes, Your Honor.

2      THE COURT:  Are you entering them because you have

3  decided that it's the best course and the appropriate course

4  for you to take?

5      THE DEFENDANT:  Yes, Your Honor.

6      THE COURT:  All right.  The next question then I'm

7  going to ask you, Mr. Sprenger, is how you wish to plead to

8  Count One of the indictment and how you wish to plead to

9  Count Four of the indictment.  If you tell me that you to wish

10 to plead guilty to one or both of those charges, I'm going to

11 accept that plea of guilty, and I'm going to find you guilty

12 of those charges, and that's the point of no return.  You will

13 have crossed the Rubicon.  It's too late to turn back at that

14 point.  Do you understand that?

15     THE DEFENDANT:  Yes, Your Honor.

16     THE COURT:  All right.

17     Then, Mr. Sprenger, how do you wish to plead to

18 Count One of the indictment in this case?

19     THE DEFENDANT:  Guilty, Your Honor.

20     THE COURT:  And how do you wish to plead to

21 Count Four of the indictment in this case?

22     THE DEFENDANT:  Guilty, Your Honor.

23     THE COURT:  All right.

24     Since you acknowledge that you are, in fact, guilty

25 as charged in Count One and Count Four of the indictment in

1  this case, you've had the assistance of counsel, you've been

2  advised of your trial rights, we've talked about the maximum

3  possible punishment and the sentencing process that has to

4  take place, and you've acknowledged that you are freely and

5  voluntarily pleading guilty, I will accept your pleas of

6  guilty and enter a finding of guilty on your plea as to

7  Count One and Count Four of the indictment in this case.

8  All right.  So you have now been found guilty of

9  those charges, Mr. Sprenger.  As I said, the next step in the

10 process is the preparation of that presentence investigation

11 report.  Mr. Brandstrader will continue to represent you and

12 advise you in connection with that process and at sentencing.

13 It's important for you to cooperate with that process going

14 forward.

15 Mr. Brandstrader, you need to contact probation

16 promptly to advise them of the entry of the guilty plea.

17 Ms. Greening, I'll ask that the government's version

18 of the offense be submitted to probation within 14 days.

19 Any defendant's version that the defendant wishes to

20 present should be presented within -- submitted to probation

21 within seven days after the government's version.

22 We will set sentencing for about four months down the

23 road.

24 THE CLERK:  June 18th.

25 THE COURT:  Is that date convenient?

1    THE CLERK:  2:00 p.m.

2    MS. GREENING:  Your Honor, I apologize.  I'm going to

3  be on trial that week.  Is there any way to move it to the

4  week before or after?

5    THE COURT:  The week after, Alberta.  Am I here?

6    THE CLERK:  I'm thinking that you're not.  Hold on.

7    MR. BRANDSTRADER:  Before I start, Judge, my son is

8  getting married in Colorado the next week.  I don't think I'm

9  going to be available.  Sorry.

10    THE COURT:  All right.  You're out, Mr. Brandstrader,

11  the week of the 24th?

12    MR. BRANDSTRADER:  Yes, Judge.

13    THE COURT:  And, Ms. Greening, you're out the week of

14  the 17th?

15    MS. GREENING:  Yes, Your Honor.

16    THE COURT:  All right.  Then let's go -- then we run

17  into the 4th of July.  Is it going to interfere with anyone's

18  travel -- let's just do -- why don't we go to, say, July 10th,

19  2:00 p.m.  Does that work?

20    MS. GREENING:  Yes, Your Honor.

21    MR. BRANDSTRADER:  Yes, Your Honor.

22    THE COURT:  Sentencing set for July 10th at 2:00 p.m.

23  Sentencing memoranda are due 14 days before that date.  Any

24  response or objection to the other side's submission are due

25  seven days prior to that date.  The sentencing order that

1    comes out today will direct the probation office to provide

2    counsel with the -- with probation's sentencing recommendation

3    at the same time probation provides that recommendation to the

4    Court.

5            Please read the order that comes out today carefully

6    because it prescribes what content is required to be included

7    in the sentencing memoranda and provides other significant

8    information to counsel.

9            Anything else we need to address?

10           MS. GREENING:  For the record, Your Honor, would you

11   like me to pass up the signed copy?

12           THE COURT:  Yeah.  If you would hand that to my

13   courtroom deputy, we'll get that on the docket.

14           THE CLERK:  Thank you.

15           THE COURT:  All right.  Anything else?

16           MR. BRANDSTRADER:  Judge, if I might, and I don't

17   know if this is even an issue, my client is at Kankakee.  He

18   is going to -- runs the AA therapy.  He has a therapist there

19   that he's got a very good relationship.  He's asking if the

20   Court can, that he remain there until the sentencing date.  He

21   has been told that guys get moved up to the MCC.  It's

22   happened once or twice in my experience.  But he is concerned

23   about leaving his therapist and the group that he runs in the

24   jail.

25           THE COURT:  In the first instance, talk with the

1   marshals about that.  You know, usually the requests are

2   running the other way, of people wanting to get to the MCC

3   from other places.  So I doubt there should be any problem

4   with leaving him -- is he at Kane County?

5             MR. BRANDSTRADER:  Kankakee.

6             THE COURT:  Kankakee.  So I doubt that there's going

7   to be a problem.  But if at some point the marshals think they

8   need to move him, you can come in on a motion, and we can talk

9   about it.

10            MR. BRANDSTRADER:  Thank you, Judge.

11            THE COURT:  But, again, usually things are moving the

12  other direction, or the problem is the other direction, so I

13  don't anticipate a problem there.

14            MR. BRANDSTRADER:  Agreed.  Thank you.

15            THE COURT:  Anything else?

16            MR. BRANDSTRADER:  Nothing, Judge.

17            THE COURT:  All right.  Thank you.

18            MS. GREENING:  Thank you.

19     (Which were all the proceedings heard.)

20                           CERTIFICATE

21     I certify that the foregoing is a correct transcript from

22  the record of proceedings in the above-entitled matter.

23  */s/Kelly M. Fitzgerald*              *January 14, 2020*

24  _____        _____
    Kelly M. Fitzgerald                          Date
25  Official Court Reporter