1

```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3
    UNITED STATES OF AMERICA,          )
 4                                     )
                        Plaintiff,     )
 5                                     )
                                       )
 6  -vs-                               )  Case No. 18 CR 105
                                       )
 7                                     )  Chicago, Illinois
    ADAM SPRENGER,                     )  August 29, 2019
 8                                     )  2:00 p.m.
                        Defendant.     )
 9

10                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JOHN J. THARP, JR.
11
    APPEARANCES:
12
    For the Plaintiff:     UNITED STATES ATTORNEY'S OFFICE
13                         BY:  MS. KELLY MATTEA GREENING
                           219 S. Dearborn Street
14                         Suite 500
                           Chicago, IL  60604
15
    For the Defendant:     THOMAS C. BRANDSTRADER, ATTORNEY AT LAW
16                         BY:  MR. THOMAS C. BRANDSTRADER
                           53 W. Jackson Boulevard
17                         Suite 618
                           Chicago, IL  60604
18
                           LAW OFFICE OF ANDREW GABLE
19                         BY:  MR. ANDREW S. GABLE
                           53 W. Jackson Boulevard
20                         Suite 863
                           Chicago, IL  60604
21

22  Court Reporter:        KELLY M. FITZGERALD, CSR, RMR, CRR
                           Official Court Reporter
23                         United States District Court
                           219 South Dearborn Street, Room 1420
24                         Chicago, Illinois  60604
                           Telephone:  (312) 818-6626
25                         kmftranscripts@gmail.com
```

1     (Proceedings heard in open court:)

2          THE CLERK:  U.S.A. v. Adam Sprenger, 18 CR 105.

3          MS. GREENING:  Good afternoon, Your Honor.  Kelly

4     Greening on behalf of the United States.

5          MR. BRANDSTRADER:  Good afternoon, Judge Tharp.

6     Thomas Brandstrader and Andrew Gable, G-a-b-l-e, for

7     Mr. Sprenger.

8          THE COURT:  Good afternoon.

9          Good afternoon, Mr. Sprenger.

10          THE DEFENDANT:  Good morning.

11          PROBATION OFFICER:  Good afternoon, Judge.  Michael

12     Alper, U.S. Probation.

13          THE COURT:  Good afternoon.

14          Are we prepared to proceed with sentencing?

15          MR. BRANDSTRADER:  Yes, Your Honor.

16          MS. GREENING:  Yes, Judge.

17          THE COURT:  Ms. Rone, would you please swear in

18     Mr. Sprenger.

19          THE CLERK:  Yes.

20      (Defendant sworn.)

21          THE COURT:  All right.  The first thing I want to do

22     is make sure I've seen everything that's been submitted.

23          I, of course, reviewed the plea agreement, the

24     presentence investigation report along with a supplemental and

25     second supplemental report, the probation office's sentencing

1    recommendation, the government's version of the offense and

2    supplemental version of the offense, the government's

3    sentencing memorandum, a separate submission that included

4    video clips and several photographs that were submitted by the

5    government that are referenced in the materials but not

6    previously included.  I just received those yesterday

7    afternoon.

8              And I have received, of course, and reviewed the

9    defendant's sentencing memorandum which includes, along with

10   various argument, a psychosexual risk evaluation and

11   approximately a dozen mitigation letters submitted by

12   Mr. Sprenger's family and friends.

13             Is there anything else I'm missing?

14             MS. GREENING:  I believe this might be included in

15   the categories you just listed, Your Honor, but the two victim

16   impact letters from the parents of both Victim C and F and the

17   parents of Victim E.

18             THE COURT:  Yes, I think those are included in the

19   supplemental material provided by probation.

20             MS. GREENING:  Okay.

21             THE COURT:  Anything else?

22             MR. BRANDSTRADER:  I think you named everything,

23   Judge.

24             THE COURT:  Okay.

25             Is either party anticipating presenting any witness

1    testimony?

2         MS. GREENING:  No witnesses, Your Honor.  I do have

3    one victim who would like to testify to the Court today.

4         THE COURT:  Okay.

5         MS. GREENING:  Make a statement, rather.

6         THE COURT:  All right.  We'll address that in just a

7    moment.

8         I want to start with the PSR.  There were I think

9    several issues the defense counsel had with certain paragraphs

10   in the PSR.  With respect to all of them, it wasn't entirely

11   clear to me what -- whether you were seeking some correction

12   to the PSR or just to clarify things for my edification.

13        MR. BRANDSTRADER:  It was more of a clarification,

14   Judge.

15        THE COURT:  Okay.  All right.  So are there any

16   statements of fact included in the PSR that you're objecting

17   to?

18        MR. BRANDSTRADER:  No, Judge.

19        THE COURT:  Okay.  Then we'll move to the question of

20   the calculation of the advisory sentencing guideline range

21   that applies in this case which is the point that the

22   Supreme Court has said all district courts should begin

23   sentencing proceedings by correctly calculating the applicable

24   guideline range.

25        Having reviewed the submissions, it's my

1    understanding, while the defense believes various aspects of

2    the guideline calculation are weighted too heavily or impact

3    the guideline range disproportionately or in a compounded

4    fashion, you're not challenging the accuracy of the

5    calculation itself?

6           MR. BRANDSTRADER:  We are not, Your Honor.

7           THE COURT:  All right.

8           And the government does not challenge the calculation

9    either?

10          MS. GREENING:  That's correct.

11          THE COURT:  All right.  I ordered the preparation of

12    a presentence investigation report to assist the Court in

13    sentencing the defendant.  The presentence investigation

14    report reflect a preliminary guideline calculation with a

15    total offense level of 43 and a criminal history category of

16    I.

17          I'll just note this much for clarity of the record.

18    The 43 is the maximum offense level that can be utilized under

19    the guideline.  If you actually do the math, the guideline

20    calculation comes out to 45, but pursuant to comment 2 of

21    Section 5.8, 43 is the maximum offense level.

22          So the PSR reflects a total offense level of 43 and a

23    criminal history category of I.  I concur with those

24    calculations as set forth in the PSR.  They're quite

25    complicated, so I'm not going to go through them and reiterate

1   them on the record, but I accept the presentation, and there's

2   been no objection to the presentation set forth in the PSR.

3         The combination of offense level of 43 and a criminal

4   history score of I yields an advisory sentencing guideline

5   range of 50 years of imprisonment, a supervised release range

6   of at least five years, up to life, a fine range of 50,000 up

7   to $250,000 along with required restitution.

8         Is there anything else we need to cover or discuss

9   with respect to the guideline calculation itself?

10        MS. GREENING:  No, Your Honor.

11        MR. BRANDSTRADER:  No, Judge.

12        THE COURT:  All right.  Then we'll proceed to

13  consider all of the other factors in addition to the advisory

14  guideline range that the Court is required to take into

15  account in determining the appropriate sentence to impose.

16        I'll hear first from the government, then from the

17  defense.

18        And, Mr. Sprenger, once your counsel has had the

19  opportunity to make his comments on your behalf, as the

20  defendant in the case, you have the right to address the Court

21  directly if you wish to do so.  You're not required to do so,

22  but you will have that opportunity.  If you choose not to

23  address the Court, that will not be held against you in any

24  way.

25        All right.  Ms. Greening, why don't we hear first

1    from the victim, and then we'll have your comments and

2    arguments.

3            MS. GREENING:  Thank you, Your Honor.

4            So I would like to call up Individual A.  If it

5    pleases the Court, I would like to continue to refer to her

6    that way to protect her children's identities.

7            MR. BRANDSTRADER:  May I sit down, Judge?

8            THE COURT:  Yes, you may.

9            MR. BRANDSTRADER:  We have no objection to that,

10   Your Honor.

11           MS. GREENING:  She's the parent of Victims A and B.

12           THE COURT:  Yes, ma'am.

13           Good afternoon, ma'am.

14           THE WITNESS:  Good afternoon, Your Honor.  I will try

15   to get through this as easily and quickly as possible.

16           THE COURT:  Let me ask you just to pull that down a

17   little.  Thank you.

18           THE WITNESS:  Is that better?

19           THE COURT:  That's better.

20           THE WITNESS:  Okay.

21           On Valentine's Day 2018, my entire world was forever

22   changed.  My views on life, definition of love and ability to

23   trust was taken from me and my family.  I'm a mother of four

24   and of Victims A and B.  They are my daughters.  It is not

25   important for me to share how I am feeling now.  It's more

1  important for you all to hear how I felt then.  In my first

2  entry, I state just a few of the many emotions that were going

3  through me and my children's minds at that time and have

4  continued to evolve, and I'm going to just read that entry

5  real quick to you guys.

6          March 22, 2018.  In so many ways I am not ready to do

7  this, to write and feel, but in so many more, I know I must

8  face this.  If I'm ever to heal and move forward, I am at a

9  crossroads, almost paralyzed by what has happened these past

10  five weeks: abandoned, betrayed, hurt, shocked, angry, lost,

11  numb, unable to fully comprehend the awful truth which keep

12  expanding further and further into my life and those around

13  me, the ones that I love and couldn't protect, lost,

14  heartbreak, isolation, anxiety, fear, the unknown of what he

15  did and what will be the pain for myself and my children and

16  everyone allowed to be affected by him; pain, unable to sleep,

17  hatred mixed with missing what I thought was love and hating

18  myself for letting him in my life to begin with.  This person

19  preyed on my family, making calculated moves, gaining my trust

20  and using love to manipulate me for his own dark and

21  unimaginable needs.  He used my children and exploited them,

22  and it did not stop there.  Other family members of mine were

23  targeted, my children's friends, my neighbor's daughters and

24  on and on and on.

25          Since that Valentine's Day I have had to leave my job

as an ICU nurse and go on short-term disability due to a new

diagnosis of PTSD related to these events. I have an

inability to function and at times to even leave the house.

My children and I have spent the last 18 months in

weekly therapy, sometimes twice a week, costing over $20,000

for those visits and continuing to grow as therapy is going to

be something we are needing for most likely the rest of our

lives. So many questions that I may know answers to they do

not yet. One of my daughters is now over 18. She has the

ability to go look at any of this information and access it

for the rest of her life, and I can't protect her from that.

And I know that my other daughter who is now 15 will also have

that right. So as difficult as it was to hear, I chose to

hear the details so that I could someday address that with

them and also the therapist. For now, whether right or wrong,

I find some comfort in knowing that they don't know the

details because once you learn them, you cannot unhear them,

and you can never forget.

Sorry.

THE COURT: Take your time.

THE WITNESS: My kids have been struggling. They

started struggling in school when they prior had not. There

were some days we just could not get out of the house. It was

too difficult for us to face the world or other people,

causing them to miss many days of school and then get them

1  further behind.  And while scars never truly go away, today

2  does mark the beginning of a healing process.

3          I would like to close with a quote from a song, as

4  music has always been a means of being healing and expressing

5  emotions.  Okay.

6          All your life is such a shame, shame, shame.  Are you

7  happy where you're sleeping?  Casting shadows on the winter

8  sky as you stood there counting crows, one for sorrow, two for

9  joy, three for girls, and four for boys, five for silver, six

10  for gold, seven for a secret that was never told until now.

11  All your life is such a shame.  Open up your eyes, you can see

12  the flames of your wasted life.  You should be ashamed, and

13  I'm not going to waste my life.

14          Thank you.

15          THE COURT:  Thank you very much, ma'am.

16          MS. GREENING:  Your Honor, the defendant in this case

17  is a predator whose conduct has harmed the youngest and most

18  vulnerable members of our community.  He produced images and

19  videos depicting himself masturbating on and around and

20  molesting children in his own home and in others.  He

21  distributed these videos to other men like him over the

22  Internet, ensuring that they will live on and on to continue

23  to humiliate and cause pain to these victims.  And he

24  possessed over 1300 other images on various devices that

25  depict child pornography, including the anal, vaginal and oral

1     rape of children as young as toddlers.  These are real

2     children whose real trauma and suffering continues even once

3     the assault is over at the hands of men like the defendant who

4     trade in this kind of material for fun.

5         Based on this conduct, Your Honor, the government is

6     asking for a sentence of 50 years' imprisonment, which is the

7     guideline range.  It's a significant sentence, but it's

8     warranted and necessary in light of the 3553(a) factors.

9         First turning to the nature and circumstances of the

10    defendant's offense.  The horrifying nature of the defendant's

11    conduct weighs heavily in favor of this guideline sentence.

12    The defendant exploited these young girls who trusted them --

13    him in their own homes as they slept.  He molested,

14    masturbated on and around these girls.  He turned their safest

15    place into a nightmare.

16        And as you just heard the effects of some -- on some

17    of these victims is not even yet realized because their

18    parents haven't shared with them what fully went on.  But the

19    mother of one victim wrote a powerful statement detailing how

20    her daughter and their family has suffered the defendant 's

21    actions.  Victim D is Individual A's niece.  She's an 8 year

22    old who was left in the care of the defendant for an

23    afternoon.  The defendant videoed himself masturbating openly

24    in front of this victim while she was fully awake.

25        Victim D's mother detailed how her daughter's grades

1  and test scores have dropped.  Her participation in sports

2  have dropped.  She's afraid of being alone.  She's changed the

3  way she dressed.  She's embarrassed to be a girl.  She's

4  developed social anxiety.  She's cried to her parents that

5  her, quote, brain keeps telling me to be sad.  She's in

6  biweekly therapy to address these issues.

7          Her parents too are suffering greatly.  Her mother

8  describes being torn apart, having heightened anxiety and pain

9  watching her child suffer.  She said that Victim D's, quote,

10  first sexual experience was decided for her by Adam against

11  her will, and when she didn't possess the purview of what sex

12  should be, Adam took that experience from her.  The

13  defendant's crimes against her child and others revealed to

14  her, that, quote, the person I trusted to protect my child was

15  the one victimizing her.  This is a recurring theme in this

16  case for the defendant.

17          Similarly, Victim C and Victim F's father wrote a

18  powerful statement to this Court stating that people like the

19  defendant are, quote, every parent's worst nightmare, and his

20  actions will affect them for the rest of their lives.

21          Your Honor, there's significant evidence to

22  substantiate that the defendant actually drugged at least one

23  of his victims, 13-year-old Victim B, before making his video.

24  As discussed in filings and shown in government's version

25  Exhibit A, the defendant sent another man pictures of himself

1    mixing a white powder substance into a cup with liquid and

2    then mixing it into the liquid.  He told the man he was

3    slipping some sleepy stuff into Victim B.  Later he said, What

4    the hell?  She's still wide awake.

5              The video he took of Victim B included him molesting

6    her as she slept.  He fondled her vagina and her buttocks on

7    camera, and Victim D did not move.

8              THE COURT:  Ms. Greening, let me interrupt you right

9    there.  I want to be clear as to the government's position

10   with respect to this question of whether the defendant did

11   drug, supply some sort of drug that put the victims to sleep.

12   Is that the government's position?

13             MS. GREENING:  It's the government's position that

14   the evidence supports that inference, yes, Your Honor.

15             THE COURT:  All right.

16             MS. GREENING:  Now, the defendant states that while

17   disturbing, the defendant's conduct, quote, did not involve

18   touching under the clothing or any other acts more typically

19   associated with contact offenses.

20             But let's be clear.  This was a sexual assault.  The

21   defendant assaulted Victim B and videotaped it.  The fact that

22   he did not assault her to the furthest extent possible is not

23   a mitigating factor.

24             On top of these videos that he produced, the

25   defendant also possessed over 1300 images and videos depicting

1   child pornography, a very limited portion of which was

2   supplied to this Court ahead of sentencing.  He collected

3   these images and videos of children being sexually abused in

4   the cruellest and most sickening ways possible, and he did it

5   for his own pleasure.  And, again, the powerful victim impact

6   statements from the identified children were depicted in these

7   images and videos.  They were ages 4 through 12 at the time of

8   their abuse, describe the pain that they experience every time

9   they learn a new person had been looking at their most

10  tortured moments for fun.  They describe living in fear that

11  someone on the street will recognize them.  The message must

12  be sent to all of these victims, those the defendant knew and

13  those that he didn't, that they matter, that society values

14  protecting them.

15          Now, turning to the defendant's history and

16  characteristics, the government does recognize in mitigation

17  that the defendant has strong family support.  He also

18  reported to probation the history of abuse himself though the

19  defendant describes a cycle of abuse, victim to predator, and

20  that factor can weigh both ways because the cycle needs to be

21  stopped.

22          Moreover, an overall review of the defendant's

23  history and characteristics weighs heavily in favor of a

24  50-year sentence in this case.  The record before the Court

25  depicts a defendant who preys on young girls and was obsessed

1    with doing so.  He exclusively dated women with young

2    daughters.  In Exhibit C to the government's version, he

3    describes two prior long-term relationships with women who had

4    young girls.  And that wasn't an accident.  Just before

5    sending a video of himself ejaculating on Victim B to an

6    undercover officer, the defendant said, quote, I only date

7    women with beautiful girls, or if they're ultra petite.

8            In another Kik chat, he referenced "sniffing" one of

9    his ex-girlfriend's daughters when she was 8 years old.  He

10   targeted these girls.  He targeted their mothers.  He lived

11   with them and exploited them in their own homes where they're

12   supposed to feel the safest.

13           Now, the government's sentencing memorandum also lays

14   out extensive evidence of the defendant's fantasies, which

15   included rape and having sex with the corpses of teen girls.

16   But it's all not just fantasy.  The defendant took very real

17   actions to live some of his fantasies out.  He installed

18   hidden cameras in the bathroom to watch Victim A naked.  He

19   masturbated all over Victim A's belongings, including her

20   cheerleading outfit and her retainer.  He invited strange men

21   over to do the same.  He took many, many what he called creep

22   shots of Victim A and other children's groins and buttocks,

23   and he sent those creep shots to many, many men over

24   Kik Messenger.

25           Turning to Victim C, Sean McCarthy's 14-year-old

1    stepdaughter.  He followed her in person.  He harassed her

2    over text message even after she blocked him.  He harassed her

3    again using a different number.  And he took substantial steps

4    to date Individual C, the mother of Minor G, whom he discussed

5    at length wanting to drug and rape, both of them.  He

6    continued even after Individual C told him to stop, called

7    security when he would come and told him that he was creeping

8    her out.  None of this is an anomaly for the defendant.  This

9    was his lifestyle.

10           Now, I would like to spend a moment talking about

11   Dr. Brenzinger's report, the evaluation that the defense has

12   submitted.  And this is both under his history and

13   characteristics and a discussion of specific deterrence in

14   this case.

15           The defense relies heavily on this report which

16   concludes that he is a low-to-moderate risk potential of

17   sexually victimizing others.  But this evaluation relies at

18   least in part on the defendant's statements, some of which

19   were demonstratively false.

20           Lie No. 1, the defendant stated repeatedly and

21   vehemently he denied ever having made physical contact with

22   the victims.  That's on page 9 of the report.  Now, the

23   government provided several disks of videos in preparation for

24   this sentencing, including Exhibit Disk 1 which contains the

25   four videos described in the stipulated offense of the plea

1   involving Victim B.  And on that disk, the defendant visibly

2   fondles Victim B's vagina and buttocks.  There is clear

3   physical contact.  He lied to the evaluator about never having

4   contact with a child.  The evaluator credited that lie.  Now,

5   six months later, the defendant had to admit to sexual contact

6   with Victim B in the plea agreement.  It's on page 6.  But the

7   evaluation and its results are tainted by the defendant's

8   lies.

9          Lie No. 2, the defendant told the evaluator that he

10  never used a phone or the Internet to solicit a minor for sex.

11  That's on page 11 of the report.  Government's version

12  Exhibit G is a Kik chat between the defendant and Sean

13  McCarthy.  The defendant screenshots his attempts to

14  communicate with McCarthy's stepdaughter, Victim C, via text

15  message.  He relays that he asked Victim C, quote, if she

16  wants to make a quick 60 bucks.  She blocked his number.

17         It's clear from the context of the defendant and

18  McCarthy's conversation and many other conversations that they

19  had about Victim C, including rape fantasies and the video

20  that the defendant made of himself masturbating on Victim C,

21  that this is in a sexual context.  He was soliciting Victim C

22  for sex using a phone.  He lied to the evaluator about that

23  conduct as well.  When the defendant provides false

24  information to the evaluator who is creating the report, the

25  result of that evaluation is tainted.

1    I also want to highlight here in this report as well

2 as in other contexts the defendant's serious minimization of

3 his conduct.  Pages 6 through 7 of the report, he claimed no

4 one was hurt by what happened.  He slipped one time.  He made

5 a mistake.  He doesn't know how the sexual things happened,

6 and he felt victimized by the charges against him in this

7 case.

8    On the concept that no one was hurt, I would point

9 the Court to Individual A's oral statement, the other victim

10 impact statements of the few parents who gathered the strength

11 to write them.  To read the statements of the children and the

12 hundreds and hundreds of images and videos that were in the

13 defendant's possessions, they're describing their rape and

14 their pain.  And if what he's referring to is the fact that

15 the children he masturbated on and molested were often asleep,

16 he's missing the point.

17    The idea that he slipped one time, again, Your Honor,

18 the record proves that is not the case.  This is the

19 defendant's lifestyle.  This is who he is.  And the idea that

20 he felt victimized by the charges, the only victims are the

21 innocent children whose videos and images of sexual

22 exploitation he created, he distributed, and he possessed.

23    Also in this report and elsewhere in his sentencing

24 submissions, the defendant put a lot of blame on alcohol.

25 This was addressed in the government's sentencing filing, so I

1  won't go much further here except to say alcohol cannot be

2  blamed for this lifestyle of abuse and exploitation that the

3  defendant lived.  This wasn't "I got intoxicated one or two

4  times and made a mistake."  It's clear from the extensive

5  record before the Court this was who the defendant was.

6           Now, a few other points I would like to address from

7  the defendant's sentencing memorandum.

8           First, that there's no evidence he did this before.

9  Now, as already discussed in the sentencing filings and

10  earlier in my presentation, there is an evidence of history of

11  this kind of behavior, including, quote, sniffing an 8 year

12  old and his discussion with the undercover officer about only

13  dating women with beautiful girls.

14           The defendant also stated that he fully accepted

15  responsibility for his actions the moment he was interviewed

16  by the FBI, but he did not.  The government's version,

17  Exhibit C, is the full report of the defendant's initial

18  interview.  He admitted to creep shots of Victim A, a

19  preference for teen girls and having a spy cam app on his

20  phone.  He denied having any hidden cameras in the house,

21  using Kik Messenger at all, which was how he sent and received

22  his videos and images of child pornography, and having any

23  images or albums of Victim B.  The defendant minimized then as

24  he has continued to do.

25           Now, the defense argues that the guidelines as

1    appropriately calculated overstate the seriousness of the

2    offense and that many of the enhancements he's received are

3    applicable to all offenders, but they're not.  Taking just one

4    example, the stipulated offense involving the production of

5    the videos of Victim B, not one of the enhancements that the

6    defendant received would apply to all production cases.  In

7    fact, several of them didn't even apply to Count One, which is

8    the other production count that he pled guilty to.  He

9    received enhancements for the offense involving a minor under

10   16, sexual contact during the video, which he did not receive

11   for Count One; distribution of the video, which he did not

12   receive for Count One; and for Victim B being in his care,

13   custody or supervisory control.  All of this, which is

14   individual to the defendant and his conduct, already gets him

15   to the offense level of 40.  Add grouping, acceptance and the

16   4B1.5 enhancement, and we're back at life, or 50 years.

17          Same with the possession guidelines, which is more of

18   the defendant's focus.  Of course not all images and videos

19   depicting child pornography include sadomasochistic conduct or

20   children under the age of 12.  And the 600 images or more

21   enhancement is appropriate and very much link to the

22   guidelines' need to reflect the seriousness of the offense,

23   for the sentence to promote just punishment.  600, or in this

24   case over 1300, images and videos; it's not just a number.

25   There are real children on the other side of those lenses,

1    kids that were raped on camera and whose assault was

2    distributed to and from men like the defendant.  Each photo is

3    traumatic.  Each video matters.  The guidelines contemplate

4    all kinds of production and offenses, and here the guidelines

5    are an appropriate calculation.  It is a high range, but it's

6    based on his conduct.

7            Now, on the argument that the application of both

8    2G2.2(b)(5) and 4B1.5(b)(1) constitute double counting, of

9    course the defendant doesn't appear to dispute the case law

10   stating clearly that it's not.  The Court in *Dowell*, which is

11   the Fourth Circuit case cited in the government's sentencing

12   memorandum, explained why these two could apply, because the

13   enhancements have two separate goals: one, to punish the

14   offense-specific conduct; and the other, to protect the

15   public.

16           But even if the defendant hadn't pled to the

17   possession count, and therefore 2G2.2 wouldn't have even

18   applied, and instead only pled to Count One and stipulated to

19   the Victim B videos, his guidelines would remain the same.

20   The stipulated offense alone had a total offense level of 40

21   plus at least one point for grouping, then plus five for

22   4B1.5, minus three for acceptance, it would still have the

23   defendant at his range of 50 years.

24           The defendant also argues that many courts have given

25   below-guideline sentences to offenders convicted of child

1  pornography offenses, and his filing lists I believe five

2  specific examples of that.  Not a single one of those cases

3  involve production.  They were all possession cases.  Here

4  it's possession and production.  These are two important

5  separate offenses to keep in mind.

6          Your Honor, I won't belabor what's been laid out

7  extensively in the government's filings and the government's

8  version of the offense.  These are real victims.  They were

9  affected.  They continue to be affected, some of whom knew and

10  trusted this person and others of whom will never meet him.

11          For all these reasons, the government requests a

12  within guideline sentence of 50 years' imprisonment.

13          THE COURT:  All right.  Thank you, Ms. Greening.

14          Mr. Brandstrader.

15          MR. BRANDSTRADER:  Thank you, Judge.

16          Your Honor, on behalf of Mr. Sprenger, if I could

17  address the evaluation as characterized by government.

18          The evaluation, as I understand it, was not based

19  solely on an interview with Mr. Sprenger.  The doctor had the

20  affidavit for complaint for search warrant which was

21  extensive, laid out the crimes that they believe to have been

22  committed.  They also had the indictment.  And if the Court

23  reads the evaluation, it does not scream, I'm trying to hide

24  something here, I'm trying to minimize something here.  My

25  client freely interacted with the doctor to discuss the

1  problems that have manifested himself in his life in the last
2  few years.

3          The Court is in a very difficult position, to
4  determine who Mr. Sprenger is.  Is he the dangerous pedophile
5  that the government makes him out to be, or is he the
6  individual reflected in the 12 letters submitted to this
7  Court, each one knowing exactly what Mr. Sprenger was standing
8  here for but at the same time lauding his generosity, his
9  ability to help others and expressing and exhibiting strong
10 family support?

11         Heartbreaking is the father's letter that they knew
12 nothing about the childhood abuse suffered by Mr. Sprenger.
13 True in his life he had suffered with depression.  He was
14 medicated early, I think in fifth grade, for anxiety, for
15 depressed moods.  He admitted to the doctor that he once
16 attempted to take his life.

17         There were problems.  There were underlying urges
18 that manifested themselves in the years after 2015.  He was in
19 his thirties.  And it is only now that, as the evaluation
20 points out, he is susceptible to treatment to address these
21 urges, these behaviors.  He stands before you almost 40 years
22 old with no relevant criminal history.  The letters show the
23 support that he receives from his family, also showing the
24 heartbreak that his behavior has caused that family which he
25 freely acknowledges.  He was cooperative.  We believe he was

1    cooperative upon arrest.  He accepted responsibility.  He pled

2    guilty.  He precluded the necessity of having a public trial.

3    He has been in custody since the day of his arrest.  He -- and

4    I failed to enter these into my memo, but he has received

5    certain documents about life changes, courses that he took in

6    Kankakee.  He was also a monitor on the tier that he had

7    worked so hard to behave and to follow the rules, that they

8    made him a monitor of the tier.  He attended AA while in

9    custody, ran meetings himself, understands that alcoholism,

10   use of alcohol cannot be used as any type of a defense, but it

11   certainly adds to a factor that the Court should consider when

12   determining who Adam Sprenger is.

13        I believe what the evaluation also shows and I

14   believe now that we know what the history of what Mr. Sprenger

15   is that this abhorrent behavior has been a slow evolution of

16   reckless conduct fueled by alcohol, fueled by drugs and fueled

17   by walking in the dark as he has the last few years and doing

18   these outrageous things to people who loved him.

19        Throwing his life away with a 50-year sentence makes

20   no sense.  It's not what the sentencing scheme calls for.

21   Yes, he must pay a penalty for his behavior, but at the same

22   time, we can't throw the human being away.  He has never had

23   the treatment that he so greatly deserves.  We will be

24   requesting placement in the appropriate facility upon the

25   disposition of sentence.  We ask this Court to invoke its

1    great powers of mercy and leniency to understand the victim as

2    a whole.  Candidly, the criminal justice is really not the

3    place to address these types of problems and these behavioral

4    issues, but when it includes so many victims, it's the only

5    place sometimes that these issues can be addressed.

6           We believe, and we say it respectfully, that the

7    mandatory minimum involved in this case of 15 years is more

8    than enough, more than sufficient to meet the guidelines set

9    out and that this Court must follow.

10           The evaluation indicates that he's a low-to-moderate

11    risk that's susceptible to treatment for the many issues that

12    he addresses.  We hope that where he goes he'll get it, but we

13    ask this Court not to throw away his life.  He has a potential

14    for rehabilitation once these issues are addressed.  Obviously

15    he'll probably be under some kind of guidance for the rest of

16    his life.  That also should be taken into consideration when

17    rendering sentence.

18           And, again, respectfully, Judge, we ask the Court to

19    find that the 15-year minimum sentence is appropriate and

20    sufficient and meets all the needs as set out by the

21    guidelines and the statutes.

22           Thank you.

23           THE COURT:  Thank you, Mr. Brandstrader.

24           Mr. Sprenger, this is your opportunity to address the

25    Court if you wish to do so.

1        THE DEFENDANT:  Your Honor, first I would like to

2   apologize to the Court and everyone involved in the

3   investigation for having to view the disgusting and obscene

4   material found in my possession.  No one should ever be

5   exposed to this material no matter what their profession.

6        Also, I need to apologize to my friends and family

7   for letting them down with my embarrassing and damaging

8   conduct.  This was not how I was raised nor was the type of

9   behavior expected of me.

10       Secondly, I need to apologize to all the victims in

11  the images and videos that I possessed.  In my own

12  selfishness, I did not realize that I was, in fact, continuing

13  their abuse.  As a victim of sexual abuse myself, I cannot

14  begin to imagine how it could possibly feel to have a record

15  of it available for everyone to see.  For my part in their

16  continued victimization, I am truly sorry.

17       Most importantly, I apologize to the families and to

18  the people I used for my humiliating and disturbing behavior.

19  My alcoholism, coupled with my undiagnosed disorders, resulted

20  in unforgiveable and malevolent conduct.  These people opened

21  their hearts and homes to me, and in return, I took their

22  trust and completely destroyed it.  I will forever be sorry

23  for ruining such a precious and invaluable gift, and I hope

24  that my abuse does not impede their happiness going forward.

25  My commitment has been and will remain to be focused on my own

1    rehabilitation so that no one in my life will ever have to go

2    through a nightmare like this again.

3         Thank you, Your Honor.

4         THE COURT:  Thank you, Mr. Sprenger.

5         Under Title 18 of the United States Code,

6    Section 3553(a), the Court is required to impose a sentence

7    that is sufficient but not greater than necessary to serve the

8    purposes that are set forth in that statute.  Those purposes

9    include the need for the sentence imposed to reflect the

10   seriousness of the offense, to promote respect for the law and

11   to provide just punishment for the offense, to afford adequate

12   deterrence to criminal conduct, to protect the public from

13   further crimes of the defendant and to provide the defendant

14   with needed educational or vocational training, medical care

15   or other correctional treatment in the most effective manner.

16   These four objectives align with the four generally recognized

17   objectives of criminal sentencing: retribution, deterrence,

18   incapacitation, and rehabilitation.  And federal courts are

19   required to fashion sentences that will, to the greatest

20   extent possible, achieve these purposes to the extent they are

21   applicable in a given case.

22        To do that, the Court is required to consider the

23   nature and circumstances of the offense and the history and

24   characteristics of the defendant.  The Court must also

25   consider other factors, such as the kinds of sentences

1    available and the advisory sentencing guideline range, as well

2    as the policy statements that inform the application of the

3    sentencing guidelines.  The Court is required to consider the

4    need to avoid unwarranted sentencing disparities among

5    defendants who have been convicted of similar crimes and have

6    similar backgrounds.

7         Many of the considerations and facts that bear on

8    these issues overlap in that they are relevant to more than

9    one objective.  Sometimes facts point in different directions

10   in terms of what they suggest that the appropriate sentence in

11   the case must be.  It is the Court's task to balance all of

12   these considerations in fashioning the sentence that best

13   promotes the sentencing objectives as they are relevant in

14   this case.

15        I'm going to discuss the factors that I consider most

16   material to the question of the appropriate sentence to impose

17   in this case.  And starting with the nature and circumstances

18   of the crimes committed by Mr. Sprenger, we have to, of

19   course, start with the seriousness of the offense.  One of the

20   two counts of conviction in this case involves the production

21   of child pornography.  The other offense of conviction, the

22   downloading and possession and distribution of child

23   pornography, that obviously, it really goes without saying, is

24   one of the most serious crimes that we recognize as a society.

25   It violates, these crimes violate any accepted norm of

1    civilized behavior and victimize the people in our society who

2    are the most vulnerable, those who cannot look out for

3    themselves.  I speak obviously of children, and this crime

4    victimized children.

5         Any form of child pornography is, therefore, a

6    serious offense, but as the government cataloged very

7    effectively, this is a case where there are innumerable

8    aggravating factors that make this not just a case of garden

9    variety child pornography, God forbid that we ever describe

10   child pornography in that manner, but there are many

11   aggravating factors here that enhance the seriousness of this

12   offense.  And of course in that regard, it's hard to imagine

13   anything more aggravating than the betrayal of trust that is

14   evident in the commission of these crimes.  The victimization

15   of members of Mr. Sprenger's own household, the people who he

16   professed to love and care for more than any other people in

17   this world, and yet those are the victims of this crime.

18        He betrayed the trust, of course, of young children

19   who believed in him, trusted him, who were supposed to be

20   learning from him for whom he should have been a mentor.

21        He also betrayed -- as Individual A said very

22   eloquently in her comments to the Court today, he also

23   betrayed her and all those who were close to their family.

24   "Gained my trust.  He manipulated my love."  There could be no

25   quarrel with that assessment.

1    And of course it gets worse because we have the

2  victimization not only of two of the children living in his

3  own household and his partner, but he didn't stop there.  He

4  victimized directly through his personal conduct in their

5  presence at least four other minors who were also known -- two

6  of whom at least were also members of his family, not his

7  household, but his family.

8    But there's more.  In addition to the victimization,

9  the direct personal victimization of these children,

10  Mr. Sprenger perpetuated the victimization of hundreds of

11  additional minors, about 1300 additional minors who had been

12  victimized by sexual abuse in the past in the attendant

13  creation of videos and pictures of that abuse.  And it is hard

14  to overstate the disturbing nature of those videos which --

15  unfortunately some of which I have had to review in order to

16  fully assess this conduct.  And as the victims universally

17  reflect, it's hard to undo or set aside those kinds of images.

18    There's more, because this isn't just a crime that

19  involves the creation of child pornography; this is a crime

20  that involves sexual abuse.  I think the government is

21  absolutely right about that.  It involves unwanted, uninvited,

22  unlawful physical contact between Mr. Sprenger and at least

23  one of the six children he victimized directly that we know

24  of.

25    It's also incredibly disturbing, when one views some

1   of this material, to come to the understanding of how brazen

2   this conduct was, how close this conduct came to being

3   discovered and adverted to by the victims.  And it is either

4   in some cases incredibly fortunate that the victim didn't turn

5   around at the wrong moment or didn't wake up at the wrong

6   moment, which brings me to yet another aggravating factor.

7   And it's hard to rank these aggravating factors, but this

8   certainly would be near the top of the list.

9        The government submits, and I conclude, that the

10  evidence does support a finding that the defendant

11  administered on at least some occasions some sort of drug to

12  the children he was victimizing.  That conclusion is based,

13  first and foremost, on the defendant's own admissions and

14  statements repeatedly saying that he did so.  As the

15  government's submission points out, it is also -- that claim

16  does not appear to be mere bravado, some kind of twisted

17  bravado.  It appears to be consistent with reality because it

18  was consistent with his ability to fondle these children while

19  they slept.

20       I will note also that despite the -- there is no

21  countervailing evidence.  There is no protest on the tape

22  recordings, the video recordings, the text messages from those

23  he was communicating with that suggested that that wasn't

24  happening.  And I'm unaware in any of the statements the

25  defendant has made that he has ever denied the allegation.  I

1   left out the fact that there's also video evidence that when

2   this discussion is going on, the defendant was mixing up a

3   crushed white powder into some sort of liquid drink.  So the

4   visual evidence, the repeated statements and the consistency

5   with the ability to actually carry out some of this criminal

6   conduct all suggests to me by a preponderance of the evidence

7   that Mr. Sprenger did exactly what he said he did in drugging

8   or administering sleepy time substances at least on occasion.

9            I could go on.  We could talk about the hidden

10  cameras in the bathroom.  We could talk about the invitations

11  to other men.  Not content to commit these crimes by himself,

12  the defendant invited other men to participate with him.  We

13  could talk about the behavior of targeting young girls.

14  Beyond the "I only date women who have beautiful girls"

15  comments, we see a direct case of this in the stalking and

16  pursuit of Victim C by Mr. Sprenger.  So this is a highly

17  aggravated case of both production and possession of child

18  pornography.

19            Factors that mitigate the seriousness of these

20  offenses?  I suppose we, the victims can count their blessings

21  that Mr. Sprenger didn't go further, but I don't find that as

22  a mitigating factor in the seriousness of the offense.  It

23  doesn't reduce the seriousness of the offense.  The offense is

24  incredibly serious, even as carried out by Mr. Sprenger.

25            I have to consider Mr. Sprenger's history and

1  characteristics, and I do consider -- and this is where there

2  are factors that are appropriately considered in terms of

3  mitigation.

4      Mr. Sprenger has no significant criminal history, and

5  that does count in his favor, though given the indicia that

6  this kind of conduct took place over an extended period of

7  time, as evidenced by factors such as the size of the

8  collection of pornography, his comments about conduct from

9  several years past, the length of time over which just the

10  conduct that's outlined in the plea agreement takes place,

11  it's clear that this was not a momentary -- these crimes were

12  not the product of momentary lapses of good judgment or

13  episodic bouts of drunkenness or other substance abuse.

14      It's clear that Mr. Sprenger does have some

15  significant and substantial mental health issues, and I have

16  no difficulty concluding that those mental health issues

17  undoubtedly are part of the story here in terms of why

18  Mr. Sprenger has engaged in this abhorrent conduct.

19      The fact that Mr. Sprenger is a victim himself is

20  part of that equation, and I think it's -- I think I'm on

21  fairly solid ground in recognizing that there's likely a

22  greater incidence of this kind of criminal activity by those

23  who have themselves been abused.  But I don't find that to

24  be -- to excuse the conduct certainly, and it points out in

25  some respects, you know, the flip side of that equation is

1    while it might help us explain some of Mr. Sprenger's conduct,

2    it also is at this point part of who Mr. Sprenger is.  And

3    part of what the Court is required to consider, as I've

4    already noted, is the protection of the public.  And for

5    whatever reasons, Mr. Sprenger developed, through a

6    combination of his choices, his genetics, his experiences, he

7    developed into the individual that we see depicted in this

8    case.  And that's the Adam Sprenger that we have to address

9    here in court today, and that is an Adam Sprenger who presents

10   a very real and significant risk to the safety of children and

11   the public in general.

12        The psychosexual assessment that the defense

13   submitted I agree generally doesn't read like an apology for

14   Mr. Sprenger's conduct, and clearly he was forthcoming in

15   large measure about his conduct.  But I also agree with the

16   government that the picture that is described and on which a

17   low-to-moderate threat assessment is based is not a complete

18   picture.  And as presented in the report, it is -- it does not

19   begin to reflect the heinous nature of the conduct that

20   Mr. Sprenger engaged in.  And most particularly, it does

21   not -- while at some points, it -- at least one point it

22   expressly acknowledges that there was some contact, it

23   nevertheless assesses Mr. Sprenger based on an apparent belief

24   that this is not a sexual -- this crime and his conduct does

25   not involve sexual assault.  And as I've already indicated, I

1   disagree with that conclusion.  Mr. Sprenger's conduct

2   reflects that he represents a very real danger.

3        I also take note of the fact, and consistent with the

4   lack of criminal history, while this is a part of who

5   Mr. Sprenger is, it's certainly not the entirety of who

6   Mr. Sprenger is.  And we can see that, and that is very

7   effectively communicated by the letters his family and friends

8   have provided for him.  This is not an individual who

9   possesses no redeeming qualities.  Apart from this criminal

10  conduct, he has lived a life that has been largely law

11  abiding.  He has enjoyed stable family relationships.  He has

12  shown himself and been recognized to be capable of maintaining

13  loving relationships.  And as we've noted, he's also shown

14  himself capable of manipulating those relationships.

15       He's been able to support himself, live productively

16  in society, but yet has never maintained long-term, stable

17  employment; by "long-term," I mean spanning many years.  He's

18  certainly not moved from job to job every few months, but

19  there are a very large number of jobs which, to his credit,

20  he's able to secure.  But the number of job changes and the

21  lack of stability in his employment and career development

22  also I think reflects some of the issues and problems that

23  Mr. Sprenger struggled with.

24       We have to take into account Mr. Sprenger's age,

25  though here that is not nearly as significant a factor as it

1    might be in some other cases because Mr. Sprenger is not and

2    will not be at an age where physiology is likely to mitigate

3    the risk that he poses for recidivating for this kind of

4    criminal activity.

5           Again contributing to, you know, this mixed bag of

6    who Adam Sprenger is is his postarrest conduct, and there are

7    a number of noteworthy aspects to that, as Mr. Brandstrader

8    points out.

9           It does appear from his involvement in AA and his

10   work as a trustee at the jail that Mr. Sprenger is, at least

11   for the present, highly motivated.  And as his own comments

12   reflect -- and I credit his present intention to do everything

13   in his power to rehabilitate himself so that he will not

14   present these kind of threats in the future.  But the fact of

15   the matter is today he presents that threat, and the Court has

16   to take that into account because the Court is required to

17   impose a sentence that will protect the public, that will

18   reflect the seriousness of the offense and will promote

19   respect for the law, as well as speak to Mr. Sprenger in terms

20   of deterring him from ever repeating this kind of conduct.

21   And the sentence must also speak to others.

22          There are two kinds of deterrence.  There's specific

23   deterrence, which is what I just spoke of, sending a message

24   to Mr. Sprenger.  But there's another kind of deterrence that

25   is particularly important in a case like this, where we're

1   talking about the protection of the most vulnerable members of

2   our society, and that's the message to those who may be

3   struggling with the same kind of demons that Mr. Sprenger has

4   struggled with.  They need to hear the message loud and clear

5   that we will protect those vulnerable members of society.

6   They need to understand -- you know, Mr. Sprenger's comments I

7   think are revealing that he said, you know, he didn't fully

8   understand and appreciate what he was doing and how he was

9   victimizing people when he was doing this, and I believe that.

10  And that's why we have to do everything in our power to make

11  sure that others get the message.

12          You know, we live in a society where the rule of law

13  is what educates our citizenry about the conduct that is

14  tolerated and the kind of conduct that is not tolerated.  And

15  the sentence imposed in this case has to send a very strong

16  message that this kind of conduct is intolerable, that it

17  ranks among the most abhorrent kinds of conduct and that it

18  will be treated as such.

19          As I indicated, I'm required to consider unwarranted

20  sentencing disparities and to try to avoid unwarranted

21  sentencing disparities.  In that regard I note that the

22  sentencing guidelines are the best tool available to try to

23  reduce sentencing disparities; and as explained by the

24  Supreme Court, district courts must treat the guidelines as

25  the starting point and the initial benchmark in considering

1    whether a proposed sentence satisfies the requirements of

2    Section 3553(a).

3         I'm required to take into account the kinds of

4    sentences available.  In this regard I note that Count One is

5    a Class B felony, which carries a maximum sentence of 30 years

6    and a minimum sentence of 15 years; Count Four, the second

7    count of conviction, is a Class C felony, which carries a

8    maximum sentence of 20 years.  So the maximum sentence that

9    could be imposed in this case is 50 years, which is the

10   guideline sentence.

11        It also bears noting that while the Court is required

12   to consider the need for vocational training, medical

13   treatment and things that will address issues and prepare

14   defendants for the ability to function productively and

15   lawfully in society, Section 3582 of Title 18 bars

16   consideration of the need to promote correction and

17   rehabilitation in connection with the imposition of a term of

18   imprisonment.

19        The Court also needs to consider restitution as it

20   bears on the sentence.  And in that regard, the government has

21   submitted a proposed restitution list of victims drawn by

22   victims that include the Victims A through F that are

23   identified specifically and personally in this case, along

24   with a number of other victims whose identities are known that

25   appear in the child pornography possessed by the defendant.

1   And the government has proposed a restitution order for those

2   identified victims that totals $86,000.

3           Mr. Brandstrader, what is the defendant's position

4   with respect to the government's restitution amount and

5   itemization?

6           MR. BRANDSTRADER:  Judge, we're going to object for

7   the record.  Let me leave it at that.  We'll object to the

8   restitution order for the record.

9           THE COURT:  All right.

10          And finally, with respect to this category of what

11  kinds of sentences are available, I also note that in the plea

12  agreement in this case, Mr. Sprenger agreed to the entry of a

13  preliminary order of forfeiture that requires the forfeiture

14  of various items of electronic equipment, computers that are

15  involved in the commission of this offense.

16          All right.  Mr. Brandstrader, are there any other

17  factors in mitigation that you neglected to discuss that you

18  would like to raise at this juncture or that you think that I

19  have neglected to discuss adequately in my comments?

20          MR. BRANDSTRADER:  No, Your Honor.

21          THE COURT:  All right.

22          Anything else, Ms. Greening, from the government?

23          MS. GREENING:  No, Your Honor.

24          THE COURT:  All right.

25          I'm going to take about ten minutes.  We'll adjourn

40

1    for about ten minutes.  And we'll come back out, and I should

2    be prepared to impose the sentence at that time.

3       (Recess.)

4            THE COURT:  All right.  We'll resume.

5            The Court is prepared to impose the sentence in this

6    case.

7            On February 15th of 2019, defendant Adam Sprenger

8    entered a plea of guilty to a charge of production of child

9    pornography in violation of 18 U.S.C. 2252A(a)(5)(B) and a

10   charge of possession of child pornography in violation of

11   Title 18 -- or excuse me.  I'm sorry.  The production charge

12   was in violation of Section 2251A of Title 18, and the

13   possession charge is in violation of Section 2252A(a)(5)(B).

14           I have considered all of the arguments presented to

15   me by government's counsel, by defense counsel.  I've

16   considered Mr. Sprenger's remarks here today.  I've considered

17   the remarks of Individual A in court here today.  I've

18   considered the victim impact statements that have been

19   submitted by other victims of these crimes.  I have also

20   considered the letters of support that have been submitted on

21   behalf of Mr. Sprenger.  I have considered the advisory

22   federal sentencing guidelines and the policy statements that

23   inform their consideration.  I have taken into consideration

24   all of the factors that are set forth in Section 3553(a), and

25   I have considered the totality of the circumstances in this

1    case in fashioning the sentence for the defendant.

2            As noted, the guideline range in this case is 50

3    years of imprisonment, and the government has recommended the

4    imposition of that guideline sentence.  The defense has

5    recommended that the lowest possible sentence of 15 years be

6    imposed.  Neither of those sentences I believe is the

7    appropriate sentence to impose in this case.

8            I'm going to impose a term of imprisonment of 30

9    years to be followed by a term of supervised release of 20

10   years.  I have already remarked about the factors relevant to

11   that determination, but I have determined that that is the

12   sentence that is sufficient but not greater than necessary to

13   promote the sentencing objectives as a whole because I think

14   that a term of 50 years is not appropriate to begin with.

15   While the offenses that Mr. Sprenger has committed in this

16   case are, as I have cataloged, abhorrent and rank among the

17   most serious offenses that we address, a sentence of 50 years

18   in this case would -- may well be a life sentence.  And I'm

19   not prepared to say that Mr. Sprenger's conduct warrants

20   imprisonment for the rest of his life.  To say that, I think

21   we'd have to say that Mr. Sprenger presents a combination of

22   someone who is irredeemable and who has committed crimes that

23   rank not just among the most serious but at the very top of

24   the chart.  Life sentences are the sentences that we impose on

25   those who have murdered and violated, you know, the most

1    fundamental commandments that we observe as a civilization.

2    And while this is certainly up there in terms of that ranking,

3    it's not at the very top.  And I therefore don't believe that

4    it is deserving of the sentence at the very top end of the

5    guideline range that could be imposed in this case.

6          The sentence that I have arrived on I think is a

7    very, very serious sentence that recognizes and respects --

8    that recognizes the seriousness of Mr. Sprenger's conduct and

9    respects the terrible toll that that conduct has taken on its

10   victims.

11         It will also, I believe, ensure the protection of the

12   public.  It is adequate to ensure the protection of the

13   public.  Mr. Sprenger will be in his mid 60s when he is

14   released from this sentence, at a time when age alone should

15   have mitigated to a significant degree the risk of and the

16   danger posed by Mr. Sprenger in terms of the risk of

17   recidivism.  And what risk remains I think can appropriately

18   be monitored and treated during the extended period of

19   supervised release that will be long enough to take

20   Mr. Sprenger should he be fortunate enough to live into his

21   late 80s.  So I think the combination of 30 years of

22   imprisonment with a 20-year term of supervised release is

23   sufficient but not greater than necessary to protect the

24   public as well.

25         It also serves the purposes of deterrence that I've

1  talked about, both directly to Mr. Sprenger and also to those

2  who, again, suffer from similar demons.  Perhaps understanding

3  that this kind of serious sentence will be imposed may help

4  some other child somewhere by giving somebody else pause to

5  think about -- more carefully about what they're doing.

6          Even if it doesn't, I think this is a sentence that

7  speaks to us as a community and as a nation and reminds us all

8  that we will and must protect the vulnerable, most vulnerable

9  among us, our children.  And perhaps the message will be heard

10  not only in the context of protecting them from sexual

11  predators like Mr. Sprenger but from other kinds of predators

12  that we're also battling in today's world.

13          I'm going to impose in full the government's proposed

14  restitution amount of $86,000 on the schedule that the

15  government has proposed.  I find the government's rationale to

16  be appropriate in assessing and distinguishing among groups

17  and individual victims.  And in the absence of any articulated

18  specific objection to the calculation, I find that it is a

19  reasonable calculation of the amount of restitution that

20  should be paid in this case to the victims, and it is also an

21  amount that there is some hope that the victims may actually

22  see some day.

23          In addition to the restitution amount, I'm required

24  to impose a special assessment of $100 on each count of

25  conviction.

1          I am not imposing the enhanced special assessment

2  because I think it unlikely that Mr. Sprenger is going to have

3  the financial resources to pay that in addition to the

4  restitution owed, and I want whatever financial resources are

5  available to go to restitution.

6          All right.  With respect to the terms and conditions

7  of supervised release, Mr. Brandstrader, I don't believe that

8  the defense objected to any of the proposed conditions?

9          MR. BRANDSTRADER:  No, Judge.  We discussed them with

10  Mr. Sprenger, and we're not lodging any objection to the ones

11  set out in the probation report.

12          THE COURT:  All right.  Understanding that, the

13  Seventh Circuit has recognized that a defendant who has had

14  the opportunity to review proposed terms and conditions of

15  supervised release in advance of a sentencing hearing and had

16  the opportunity to object may waive the review and individual

17  recitation of those conditions at the sentencing hearing if he

18  wishes to do so.  Do you wish to waive that process, or I can

19  go through the individual conditions?

20          MR. BRANDSTRADER:  We'll waive, Judge.

21          THE COURT:  All right.

22          No fine will be imposed, again, for the reasons that

23  any financial resources that Mr. Sprenger has available should

24  go to paying restitution to the victims of his crimes.

25          Going back to the term of imprisonment for a moment,

1   that term of 30 years will be imposed on Count One.  A term of

2   20 years will be imposed on Count Four, those terms to be run

3   concurrently.

4          All right.  Mr. Sprenger, you have the right to

5   appeal the sentence and judgment entered in this case.  Any

6   appeal that is taken must be filed by filing a notice of

7   appeal in this district court within 14 days of the entry of

8   this judgment.  The judgment will likely be entered on the

9   Court's docket tomorrow which will start that 14-day clock

10  ticking.

11         Mr. Brandstrader, is the defense seeking any

12  recommendations by the Court to the Bureau of Prisons with

13  respect to the sentence or --

14         MR. BRANDSTRADER:  Yes, Judge.  We would respectfully

15  ask the Court to recommend FCI Elkton, E-l-k-t-o-n.  I believe

16  it's in Ohio.  They offer sex treatment programs.

17         THE COURT:  E-l-k-t-o-n?

18         MR. BRANDSTRADER:  E-l-k-t-o-n.

19         THE COURT:  All right.  I certainly will make that

20  recommendation.

21         MR. BRANDSTRADER:  Thank you.

22         THE COURT:  Were there any others?

23         MR. BRANDSTRADER:  Well, the other one is I would say

24  it's Devens in Massachusetts, Judge.  They have the full

25  treatment program, FMC Devens, D-e-v-e-n-s.

1          THE COURT:  All right.

2          Mr. Sprenger, I'm happy to make those

3    recommendations.  They're certainly warranted here.  You

4    should understand, however, that I do not have the authority

5    to order the Bureau of Prisons to provide any particular type

6    of treatment or to designate you to any specific facility.

7    They take recommendations by the Court seriously, but

8    ultimately it is only a recommendation.

9          Mr. Alper, anything from probation that I've

10   neglected to cover?

11          PROBATION OFFICER:  No, Your Honor.  Thank you.

12          THE COURT:  Ms. Greening, anything else from the

13   government?

14          MS. GREENING:  A few quick things, Your Honor.

15          On supervised release, for discretionary condition 6,

16   the government requests adding a few additional individuals to

17   the no contact order, including all of the victims who have

18   been listed in this case, Victim C, D, E, and F.

19          THE COURT:  Yes, thank you.  I had actually scribbled

20   that in in my note.  I will make that change.

21          No objection, Mr. Brandstrader?

22          MR. BRANDSTRADER:  No objection, Judge.

23          THE COURT:  All right.

24          MS. GREENING:  I don't believe the Court has

25   addressed forfeiture.

1       THE COURT:  You're right.  I talked about it earlier
2  but did not impose the forfeiture.

3       The Court will grant the government's request for
4  entry of the preliminary forfeiture order, the entry of which
5  was agreed to in the plea agreement between the parties.  So
6  that will be entered along with the judgment order.

7       MS. GREENING:  Thank you, Your Honor.

8       And the last thing is that the government moves to
9  dismiss the other counts in the indictment.

10      THE COURT:  All right.  On the government's motions,
11  Counts Two and Three?

12      MS. GREENING:  Yes, Your Honor.

13      THE COURT:  Will be dismissed.

14      One other aspect.  In entering the restitution order
15  proposed by the government, the Court recognizes and
16  acknowledges and identifies each individual listed in that
17  order as a victim of this defendant's crimes.

18      All right.  Anything else?

19      MS. GREENING:  No.  Thank you, Your Honor.

20      THE COURT:  All right.

21      MR. BRANDSTRADER:  Nothing, Judge.

22      THE COURT:  Mr. Sprenger.

23      THE DEFENDANT:  Yes, Your Honor.

24      THE COURT:  This sentence -- a harsher sentence could
25  have been justified.  I mean it when I say that I don't

1  believe you are irredeemable.  The love and support that you

2  have here from your family members is the greatest testament

3  to that.  I hope that you will hold that with you and that

4  will be of some strength to you as you move forward with your

5  life.  And I wish you good luck and success in battling the

6  demons that have brought us here today.

7          To the victims of the crime who are here, thank you

8  for your courage and your contributions to this process.  I

9  hope that you feel justice has been done.

10         We're adjourned.

11    (Which were all the proceedings heard.)

12

13                    CERTIFICATE

14    I certify that the foregoing is a correct transcript from

15  the record of proceedings in the above-entitled matter.

16  */s/Kelly M. Fitzgerald*              *January 17, 2020*

17  _____      _____
    Kelly M. Fitzgerald                  Date
18  Official Court Reporter

19

20

21

22

23

24

25