UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

     v.

ADAM SPRENGER

18 CR 105

Honorable John J. Tharp, Jr

**<u>GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS</u>**

**TABLE OF CONTENTS**

I. FACTUAL BACKGROUND...................................................................…….…...............1

  A. Defendant's Collection of Child Pornography...............................3
  B. Defendant's Aggravating Relevant Conduct ................................6
   a. Defendant's Exploitation of Victims A & B ................................. 6
   b. Defendant's Exploitation of Victim C...........…….........................7
   c. Defendant's Exploitation of Victims D & E.............................9
   d. Defendant's Exploitation of Victim F......................................10

II. GUIDELINE CALCULATIONS.................................................................11

III. THE FACTORS SET FORTH IN 18 U.S.C §3553(A) WARRANT A WITHIN-
  GUIDELINES SENTENCE OF 20 YEARS' IMPRISONMENT...................11

  A. Nature and Circumstances of the Offense.........................…......12
  B. History and Characteristics of the Defendant................................15
  C. The Need to Reflect the Seriousness of the Offense, Afford Adequate
   Deterrence, Promote Respect for the Law, Provide Just Punishment,
   Protect the Public, and Provide Correctional Treatment..................20

IV. RESTITUTION...........................................................................................21

V. SUPERVISED RELEASE.............................................................................22

VI. CONCLUSION............................................................................................23

The UNITED STATES OF AMERICA, by its attorney, MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, hereby submits its position paper as to sentencing factors, and asks this Court to impose a sentence of 20 years' imprisonment, which is within the applicable Guidelines range.

## I.    BACKGROUND[1]

### *Factual Background*

The defendant manufactured, possessed, and traded in child pornography. He sexually exploited children in his own home, children who trusted him, molesting and masturbating on them on camera and distributing images and videos of them to men across the Internet. He invited men over to the home to masturbate on their clothes, beds, and other belongings. He sexually exploited additional children he became familiar with through contacts he met over Kik Messenger. Defendant amassed a collection of over 1,300 images and videos constituting child pornography that depicted minor victims, some as young as toddlers, being molested and orally, anally, and vaginally raped.[2]  He distributed, and transported across state lines, the videos depicting this sexually explicit conduct that he produced and received.

---

[1] Unless otherwise notated, the facts presented in this section are from defendant's plea agreement, the original Government's Version of the Offense and associated exhibits submitted, the PSR, the Updated PSR, and the photos and videos that are the bases for the count of conviction, the stipulated offense, and relevant conduct.

[2] Prior to sentencing, the government will provide to the Court a transcript of the original sentencing hearing as well as a binder of the same materials that were provided in advance of the first sentencing hearing, containing a sample of the videos and images that are the subject of the current count of conviction and the stipulated offense, as well as a designated laptop computer on which to view the videos.

### *Procedural Background*

Defendant was charged with two counts of production of child pornography (relating to Victim A and B, respectively), in violation of Title 18, United States Code, Section 2251(a), one count of transportation of child pornography (relating to Victim B), in violation of Title 18, United States Code, Section 2252A(a)(1), and one count of possession of child pornography (relating to Victims A, B, and C, among others detailed below), in violation of Title 18, United States Code, Section 2252A(a)(5)(B). On February 15, 2019, defendant pleaded guilty to Count One (production of child pornography relating to Victim A) and Count Four (possession of child pornography) and admitted Count Two (production of child pornography relating to Victim B) as a stipulated offense. Count One concerned defendant's production of photos of himself engaging in sexually explicit conduct next to Victim A as she slept, including a photo of his own naked, erect penis next to Victim A's face and a photo of his face, with his tongue sticking out, next to Victim A's clothed vagina. Count Four concerned defendant's possession of over 1300 images and videos depicting child pornography. The stipulated offense concerned defendant's production of a video of himself masturbating next to Victim B as she slept and fondling her clothed vagina and buttocks. Defendant was sentenced to 30 years' imprisonment on Count One and 20 years' imprisonment on Count Four, to be served concurrently. Counts Two and Three were dismissed pursuant to the plea agreement. Defendant was also ordered to pay a total of $86,000 in restitution to the victims of both the production and possession offenses.

Subsequently, defendant's conviction on Count 1 was vacated by a Seventh Circuit ruling which held that the images that were the subject of Count 1 did not constitute child pornography because they depicted defendant, but not Victim A, engaging in sexually explicit conduct. The case was remanded for re-sentencing on Count 4.

## A. Defendant's Collection of Child Pornography

As described in the government's original sentencing submission, defendant collected over 1300 images and videos depicting child pornography, including images and videos of children as young as toddlers being forced to engage in oral, vaginal, and anal intercourse, including sadomasochistic conduct. *See* R. 38 at 3-6. Image after image of prepubescent children being sexually exploited in the cruelest and most sickening ways possible for the sexual gratification of the defendant and others who downloaded and traded these images.

Defendant utilized several electronic devices to view and store images and videos depicting child pornography, including: (1) an HP laptop computer, model Pavilion DM4, bearing serial number CNU1311MPR; (2) an HP laptop computer, model Compaq nc6400, bearing serial number CND70528HT; (3) a Verizon Samsung Galaxy S7 cellular phone, bearing IMEI number 359764081485953; (4) a Samsung EVO 16 GB micro SD card, bearing serial number KPABT27PB629; and a DANE-ELEC 2 GB USB drive, bearing serial number 4820-B6C1.[3]

---

[3] Defendant has agreed to the forfeiture of each of these electronic devices, pursuant to his written plea agreement. R. 38 at 18.

Each of defendant's devices contained images and videos depicting child pornography. For example, on the Samsung EVO micro SD card, law enforcement recovered approximately 387 videos and 66 images depicting child pornography. These include a video entitled DSCN2704.MP4.mpg, which depicts a girl who appears to be under five years old being orally penetrated by an adult male, as well as a video entitled Luna4yo-First Anal.avi, which depicts a very young girl being anally penetrated by an adult male. NCMEC identified both of these child victims as real children. Real children whose horrifying rape and abuse the defendant downloaded and viewed for his own pleasure.

At defendant's sentencing in January 2020, the Court received written victim impact statements from six identified victims of Count Four. Each of them described the pervasive and devastating impact on their lives of the circulation of the child pornography images that defendant consumed for his own pleasure. And each of them described the consequences they will live with forever, as a result of the circulation of the images on the internet.

- The mother of "Fiona" and "Erin," who were drugged and raped by a relative to produce child pornography videos that defendant possessed, stated, "there really are not words strong or accurate enough to describe the impact that being thrust into the dark world of the crimes of child pornography has had on my family." She described the effects on her children as "life sentences," and went on to that "Every relationship they will have, for the rest of their lives, will be altered because of this crime. The odds are against any of them being able to experience healthy relationships." Because of the distribution of these images over the internet, she explains, their "horrific" traumas are "never-ending ordeals."

- "Chelsea" submitted a statement describing that, as a result of the child pornography videos that defendant possessed, she suffers from PTSD,

depression, paranoia, anxiety, nightmares, substance abuse issues, trust and relationship issues, and behavior regulation issues. "Chelsea" also spoke to the long-term consequences of the offense conduct on her life: "I think this affects my view of the future, I think my future I messed-up and limited because of the videos and what happened."

- "Jenny" was molested at 7 years old to produce the child pornography images that defendant possessed. She explained that her life has "never been the same" and explained that she is "uncomfortable with men and boys," "conscious of [her] clothing" covering her, and stated, "I worry about the pictures of me that are out there and I hate that others see them. I have feared over the years that someone would recognize me in public." "Jenny" also stated, "I went to therapy for a while but I stopped because I just wanted to forget it. With the pictures still out there I can't."

- "Pia" was four years old when she was molested by a trusted adult to produce the child pornography images that defendant possessed. "Pia's" mother described her daughter's "depression," "crippling insecurity," and "fear." She stated Pia "is afraid, as am I, that she will be recognized by those who have downloaded the images of her abuse… She doesn't want to be defined as a victim, but she cannot escape her victimization, and she can never put it in the past, because it is ongoing." "I worry that it may never be possible for her to 'recover' from the ongoing abuse."

- "Maureen" described that, because the images defendant possessed of her "abuse and rape" continue to be circulated over the internet, "It never ends. It is never over. It keeps coming back, day after day, year after year, and I can never escape it… having these images and videos out there for anyone to see makes me wonder all the time who has witnessed my abuse and rape and did nothing but keep and share it. … I can never feel secure in any situation. I can never know how many people have witnessed my abuse."

Defendant perpetuated these victims' abuse, and the abuse of hundreds of other victims, for his own pleasure. He and others who possess and trade these images and videos ensure that the victim's trauma will reverberate throughout their lifetime, in every aspect of who they are and how they experience the world.

### B. Aggravating Relevant Conduct

As the Court has recognized, defendant was not content to merely possess child pornography, already one of the most serious crimes society recognizes. Defendant sought to produce it, too, and he used children that he knew and cared for to do it. Although Count One is no longer a count of conviction, the admitted conduct which formed the basis for that conviction, as well as the stipulated offense and relevant conduct, remains relevant at sentencing as highly aggravating factors.

#### a. Defendant's Exploitation of Victims A and B (Previously Count One and Stipulated Offense)

As set forth in the government's original sentencing submission, defendant made videos of himself masturbating on and around sleeping Victims A and B, as well as their belongings. While making these videos, defendant fondled a sleeping Victim B's clothed groin and buttocks, masturbated over her, and ejaculated on her pants. Victim B was 13 years old at the time. Defendant sent these videos to several men over Kik Messenger. G.V. Exhibits A, B. To accomplish this sexual abuse without being found out, defendant drugged Victim B. In a Kik message with another user, defendant discussed being "tempted to cum on [Victim B]" and, noting that she had been alone in her room the night before, stated, "If I knew the setup was there I would have put something in [Victim B's] drink last night. Haha." G.V. Exhibit A. Defendant then stated he was going to "slip some sleepy stuff" into Victim B. *Id.* Defendant then sent pictures of himself pouring a white powder into a cup and mixing it into the liquid. *Id.* Defendant later stated, "What the hell?? Shes still wide awake??" *Id.*

Since the January 2020 sentencing hearing, law enforcement has confirmed through analysis of the data obtained from the search of defendant's cell phone that these photos were taken in the vicinity of defendant's residence on April 6, 2017, at approximately 8:38 p.m. Defendant took the video of himself groping and ejaculating on Victim B later the same night, on or about April 7, 2017, between approximately 2:02 and 2:10 a.m.

Defendant also took a series of photographs of himself engaging in sexually explicit conduct with a sleeping Victim A, who was 14 years old at the time. These images, which are the subject of Count One, included defendant's naked, erect penis next to Victim A's face, his tongue next to Victim A's clothed vagina, and his naked, erect penis next to Victim A's hand.

Defendant also installed a hidden camera in the bathroom to take surreptitious videos of her as she changed and used the bathroom, and regularly took "creepshots" of Victim A's clothed groin and buttocks, using a cell phone application that kept his home screen dark to hide the fact that he was taking photographs. He regularly shared these images and videos with other men over Kik Messenger. Defendant further regularly masturbated on Victim A and Victim B's belongings, and invited strange men to the home to masturbate on their underwear, beds, and other belongings. *See* G.V.[4] Exhibit C, p. 6; G.V. Exhibit L, p. 2.

### b. Defendant's Exploitation of Victim C

---

[4] References in this memorandum to "G.V." are to the original government's version and exhibits submitted to probation, defense counsel, and the Court. The government will provide a courtesy copy of this to the Court along with the original sentencing materials.

As set forth in the government's original sentencing submission, defendant also abused girls outside of his own home. After meeting another individual named Sean McCarthy[5] over Kik Messenger, defendant went to McCarthy's residence in the early morning hours on at least one occasion to masturbate on McCarthy's girlfriend's minor child, Victim C. *See United States v. Sean McCarthy*, 18 CR 119, R. 39 at 3. Victim C was 14 years old at the time. This video was found on defendant's micro SD card. *See* R. 38 at 5. Defendant and McCarthy planned the incident in advance, with defendant parking down the street and waiting until McCarthy's girlfriend, Individual B, left for work. Defendant and McCarthy began masturbating in the kitchen, where defendant was filming on his phone. Defendant pointed the camera at his penis and the two men entered Victim C's bedroom. Defendant continued to masturbate over Victim C as she slept. As defendant began to ejaculate, McCarthy pinched some of the ejaculate off of defendant's penis and flicked it three times in a downward manner toward Victim C's face. Defendant sent this video to at least three individuals, including McCarthy (over text message) and two other men (over Kik Messenger). *See McCarthy*, 18 CR 119, R. 39 at 4; G.V. Exhibits H, I.

Defendant developed an obsession with Victim C as well, following her in person and contacting her via text message from different numbers, despite her blocking him and telling him to stop. For example, in one Kik Messenger chat,

---

[5] On July 11, 2019, McCarthy pled guilty to one count of production of child pornography, pursuant to a written plea agreement. *United States v. McCarthy*, 18 CR 119, R. 38, 39. McCarthy's sole count of conviction was vacated by the Seventh Circuit and his case was dismissed and the Court dismissed his indictment on the government's motion on October 21, 2020. R. 66.

defendant shared with McCarthy screenshots of defendant attempting to communicate with Victim C over text message. G.V. Exhibit G. McCarthy encouraged defendant to tell Victim C that "she sat across from you at Cheesecake Factory." *Id.* Defendant asked Victim C "if she wanted to make a quick 60 bucks." *Id.* Victim C blocked defendant's phone number, and defendant texted from a different number. *Id.* ("Little cock sucker blocked me. Shes getting angry dick now."). Defendant sent McCarthy a screenshot of his text to Victim C from a different number, in which Victim C told defendant to stop. *Id.* In the same chat, defendant also stated that he "need[s] a vid of [Victim C] eating my cum again. All I have is the memory" and "Im pissed at [Victim C] now. So she needs to eat my cum again." *Id.* Defendant's electronic devices at the time of the search contained a wealth of "creepshots" of Victim C, many of which were focused on her clothed buttocks and groin. Defendant's Kik Messenger history shows that he was part of a group chat entitled "[Victim C's first name] lovers." G.V. Exhibit I, p. 1; *see also* G.V. Exhibit L, p. 6.

Defendant also fantasized about drugging Victim C and her mother. *See, e.g.,* G.V. Exhibit J (McCarthy: "You get to fuck one. Who do u choose?" . . . Defendant: "[Victim C]. But she's drugged. And completely gone. And I have like 5 hours."); G.V. Exhibit J (Defendant stated that he wanted to "gain [Individual C's] trust to let me into her place. Drug her, fuck her, then find [Minor G's] bedroom.").

### c. Defendant's Exploitation of Victims D and E

Law enforcement recovered from defendant's electronic devices a video that he produced depicting his naked, erect penis as he masturbated in the same room as

Victims D and E, Individual A's 8-year-old niece and 2-year-old nephew. *See* PSR[6] at ¶ 31; G.V. Exhibits E, F. The video panned to the children, who were playing on the floor, and back to defendant's penis as he masturbated.

### d. Defendant's Exploitation of Victim F

As set forth in the government's original sentencing memorandum, in addition to his vast collection of child pornography, law enforcement also found on defendant's devices videos that McCarthy had produced of McCarthy masturbating next to Victim F, Victim C's younger sister. *See McCarthy*, 18 CR 119, R. 39 at 2-3. In one of these videos, for example, McCarthy pointed the camera downward showing his naked, erect penis as he masturbated. *Id.* McCarthy then panned the video upwards to show Victim F seated at a table with her back to the camera. *Id.* at 3. McCarthy walked towards the table and continued to masturbate while standing directly behind Victim F. *Id.* McCarthy sent the video of Victim F to defendant over Kik Messenger. *Id.* Victim F was 11 or 12 years old at the time of the video. *Id.* at 2. Law enforcement also recovered numerous clothed images of Victim F in bikinis and/or focused on Victim F's groin or buttocks. Defendant further tried to exploit Victim F via Kik chats with McCarthy: On one occasion, McCarthy sent defendant a photograph of Victim F's water bottle and defendant directed McCarthy to "wash your cock." G.V. Exhibit J. Defendant warned that Victim F would notice if McCarthy ejaculated into the bottle, but stated, "if you stir it up with tour [sic] dick she wont. It'll still be clear." *Id.*

---

[6] References to the "PSR" in this memorandum are references to the original Presentence Investigation Report prepared by the Probation Department.

## II. GUIDELINE CALCULATIONS

The government has reviewed the criminal history and offense level calculations set forth in the Updated Presentence Investigation Report submitted by the United States Probation Office. The government agrees with the calculations contained in the Updated PSR. The total offense level is 38, which, when combined with a criminal history category of I, results in a Guidelines Range of 235 to 293 months. However, because the statutory maximum sentence is less than the applicable guideline range, the restricted guideline range is 235 to 240 months. Updated PSR ¶ 29, 31.

## III. THE FACTORS SET FORTH IN 18 U.S.C. § 3553(A) WARRANT A WITHIN-GUIDELINES SENTENCE OF 20 YEARS' IMPRISONMENT

The Sentencing Guidelines provide a starting point and initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). Although a sentence within the Guidelines range is presumptively reasonable, *United States v. Cano-Rodriguez*, 552 F.3d 637, 639 (7th Cir. 2009), the court must consider the factors set forth in Title 18, United States Code, Section 3553(a) in determining an appropriate sentence. Considering these factors, a sentence within the advisory guidelines range of 20 years' imprisonment is sufficient, but not greater than necessary, to reflect the seriousness of defendant's offense, promote respect for the law, provide just punishment for defendant's crime, and afford adequate deterrence to similar criminal conduct.

11

## A.    __Nature and Circumstances of the Offense__

The nature and circumstances of the offense of conviction remain as serious today as they were when the Court sentenced defendant to 20 years' imprisonment in January 2020, and the same sentence is equally appropriate today as it was then. As the government stated, and as the Court recognized, defendant collected image after image of prepubescent children he had never met being sexually exploited in the cruelest and most sickening ways possible for his own sexual gratification, including anal and vaginal rape of children as young as toddlers. Defendant's victims and their parents will have to live with the fact that these photos and videos depicting their traumatic abuse were disseminated to others, and that they may be viewed for years to come by those who derive sexual gratification from such images.

The Supreme Court has observed that "child pornography is pernicious precisely because the harm it produces is not limited to the sexual abuse it depicts." *United States v. Klug*, 670 F.3d 797, 800–01 (7th Cir. 2012); *see New York v. Ferber*, 458 U.S. 747, 760 n. 10 (1982). "Because the child's actions are reduced to a recording," the Court reasoned, "the pornography may haunt him in future years, long after the original misdeed took place." *Ferber*, 458 U.S. 760 n. 10 (1982); *see also Osborne v. Ohio*, 495 U.S. 103, 111 (1990) (observing that "pornography's continued existence causes the child victims continuing harm by haunting the children in years to come"). "Indeed, in the years since *Ferber* was decided, federal courts have focused on the enduring harm to the child victims in concluding that child pornography

12

offenses warrant harsh sentences." *Klug*, 670 F.3d at 800–01 (7th Cir. 2012) (collecting cases).

Yet while the nature and circumstances of defendant's conduct have not changed, the extent to which the Guidelines Range reflects the full scope of his conduct has. Defendant did not merely possess child pornography, he distributed it to others, perpetuating and amplifying the victimization of the child victims. And he acted on his fantasies by creating his own sexually explicit and abusive videos and photos, and distributing those as well.

Defendant' conduct was not only cruel and depraved, it was calculated, strategic and duplicitous. He chose victims in his own home, to whom he had unfettered access. He entered into and maintained a long term, three year relationship with an adult woman, gained her trust and to gain access to her children. He manipulated her and the other adults in her circle of family and friends, in order to gain access to all the children in their care and in their families (Victims A, B, D and E). As the Court recognized at defendant's first sentencing hearing, his conduct in these relationships shows that, while defendant has "enjoyed stable family relationships," he has also "shown himself and been recognized to be capable of manipulating those relationships," and it is "hard to imagine anything more aggravating than the betrayal of trust that is evident in the commission of these crimes." Tr.29:12-14, 35:11-14. Indeed, defendant held himself out, successfully and over a long period of time, in many intimate relationships, as a trustworthy caretaker when he was, in fact, a predator. Defendant bragged to a UC about doing this

13

regularly, stating, "I only date women with beautiful girls. Or if they are ultra petite." Plea, p. 7. Defendant also bragged to other men about the access he had to his victims' friends, as a trusted adult (G.V. p. 6). This was not puffing. It was, unfortunately, true. A parent of Victims A and B spoke at defendant's first sentencing hearing and told the Court, "He used my children and exploited them, and it did not stop there. Other family members of mine were targeted, my children's friend's, my neighbor's daughters and on and on and on." Tr. 8:21-24. What this parent uses shorthand to describe—"and on and on and on"—is the long list of adults that defendant was able to deceive and succeed in convincing them he was not a threat. The Court also received a victim impact statement from a parent of Victim E, who explained that defendant was "treated as family," spending holidays and vacations with them, and was trusted to baby-sit for children in the family, due to what this parent described as defendant's "gross deception" of them all. Defendant lived in this relationship and in this family for years, appearing outwardly to all who knew him to be a sincere and trustworthy person with a conscience and a sense of right and wrong when, in fact, he was a depraved predator looking for opportunities to use their children for his own sexual pleasure. He also entered into relationships with adult men (Sean McCarthy, for example) for the purpose of gaining access to other adult women and children in their care (Individual C, Victim C and Victim F) and sharing access to the children in his care.

Every aspect of defendant's conduct underscores his duplicitous nature. Defendant imposed himself on these children while they were not looking, by

ejaculating on them, their beds, belongings, clothing, retainers, and masturbating on them and in their presence. He spied on them and took surreptitious photos and videos of them changing and using the bathroom, in all manner of private moments, without their knowing. He used concealed cameras and specialized applications to allow him to do so without being noticed. He preferred to victimize them when they were in their most vulnerable, defenseless state – when they were sleeping and unable to cry out or report his exploitation. Sometimes, he even drugged them so that they would remain unconscious and unable to react to his abuse. He did those things because he knew that what he was doing was abuse. He took those steps to conceal his conduct because he was well aware he was violating them and he would be stopped by them or others if he did it in the open. And despite knowing what he was doing was harmful and damaging to them, defendant did not want to be stopped. He did not want help or treatment; he wanted to continue doing it.

Defendant's offense is therefore distinguished from others convicted of similar offenses by the aggravating nature of his relevant conduct. The nature and circumstances of these offenses weigh heavily in favor of a lengthy custodial sentence, to provide justice for the children victimized to create these images and to reflect the abhorrence our society and our justice system holds for this conduct.

### B. History and Characteristics of the Defendant

Defendant is a dangerous pedophile who preys on young girls whose conduct has escalated over time. Defendant is not someone who merely possesses child pornography, serious enough to justify a lengthy custodial sentence in itself. He is

15

someone who acts on his depraved desires. It is concerning that the seriousness and brazenness of defendant's sexually abusive conduct has escalated over time. Defendant described being in two previous relationships with adult women who had teenaged or pre-teenaged daughters. *See* G.V., Exhibit C, p. 6. According to defendant, he lived with one of these women, who also had two daughters, for approximately two years. Defendant stated that, while he did not take "creepshots" of these children, he had "stolen" photos of them from Instagram and Facebook and continued to do so. As the Court knows, when defendant moved onto Victim A and B's household, his conduct escalated significantly to include not only making and distributing videos of his own sexual abuse of minors, but also to masturbating on their belongings, drugging them and harassing them in person.

Defendant also discussed with McCarthy his desire to make his rape fantasies a reality, and the steps that he took toward that end. On a Kik chat with McCarthy, defendant discussed how he wanted to "assume another identity" to get Individual C and Minor G so that Minor G could "taste [his] load" and then "be able to disappear." G.V. Exhibit J. Defendant expressed frustration that Individual C "knows I'm adam" and that the "cops have [his] fingerprints." *Id.* In an interview with law enforcement, Individual C confirmed that defendant had visited her at her place of employment on approximately five occasions; that he had asked her out and she declined; that defendant requested to follow her on social media accounts and she denied and blocked him; that she told him he was "creeping [her] out"; and that she felt compelled to alert security to his presence on several occasions. *See* G.V. Exhibit K.

16

Defendant has also consistently minimized certain aspects of his offense conduct. In his first interview with law enforcement, defendant denied using hidden cameras and Kik messenger and denied having any images of Victim B. As the government pointed out in its original sentencing memorandum, defendant also did not disclose to probation facts which the pornography he possessed, and his messages with McCarthy, clearly established—that his sexual preferences included not only teenagers, but children as young as toddlers being orally, anally, and vaginally penetrated. PSR at ¶ 15; R. 38 at 5. Neither did defendant disclose to probation that he had fantasized about harming sexual partners, when in fact he had messaged with McCarthy about his desire to have sex with deceased teenagers and well as his interest in raping McCarthy's fiancé's sister (Individual C) and her eight-year-old child (Minor G). Defendant told McCarthy that he wanted to "gain [Individual C's] trust to let me into her place. Drug her, fuck her, then find [Minor G's] bedroom." *Id.* Defendant also openly fantasized about drugging and raping Victim C. *Id.* Further, during a sex offender evaluation, which defendant relied on heavily at sentencing, and which the Court agreed was based on "not a complete picture," Tr. 34:16, defendant denied making physical contact with any of his victims, when in fact he had fondled Victim B in the video he made the same night he drugged her, and when he had bragged to the UC about making contact with both Victims A and B on other occasions.[7] Defendant also denied soliciting Victim C for sex, and made many statements minimizing his conduct and the effect of it on his victims. Tr. 17-18.

---

[7] When asked by the UC, "how far have you got with your two? Or aren't you touchin them?" defendant responded, "Just rubbed my cock on their face and hands while sleeping."

Defendant also reports that he has substance abuse issues and that he was "drunk every instance" during the commission of the instant offense. PSR at ¶ 130. At sentencing, defense counsel characterized the offense conduct as a "slow evolution of reckless conduct fueled by alcohol." Tr. 24:15-16. What this statement shows is not mitigation but, again, minimization of the true nature of his conduct. Even in the isolated acts of taking and distributing videos, defendant had sound enough mind to access the Internet on his phone, locate the Kik Messenger application, log in, enter a particular group chat or individual chat, and send the videos and/or images with coherent accompanying messages. *See*, *e.g.*, G.V. Exhibits A, B, G, H, J. This is not the behavior of someone who was so intoxicated as to suspend the power of reason.

More importantly, however, defendant's conduct was not limited to the moments in which he was, perhaps, emboldened by alcohol to act on his desires, in which instances his conduct was fairly characterized as "reckless" only in the sense that it risked getting caught, and more accurately characterized as deliberately abusive as it related to his victims. It involved his long-term, strategic effort to create the opportunity to act on his desires. It included years of manipulating and deceiving others and insinuating himself into a relationship and a family where he had constant, unfettered access to his victims. It included concealed recording devices, the deception of adults whose trust he had gained, and many maneuvers to hide his history and his true nature and purpose. The Court therefore correctly recognized the record is clear that defendant's abusive conduct was "not the product of momentary

lapses of good judgment or episodic bouts of drunkenness or other substance abuse," Tr. 33:12-13, and this remains true today.

The government recognizes that defendant's his lack of violent or child exploitation-related criminal history, family support, and reported history of being abused are mitigating factors. PSR at ¶¶ 86, 97, 107. Defendant's lack of significant criminal history, however, is taken into account in his Guidelines and does not differentiate him from other, similar offenders who are caught for the first time. And, as the Court noted, his history of abuse can cut both ways because, while it "might help us explain some of Mr. Sprenger's conduct, it also is at this point part of who Mr. Sprenger is." Tr. 34:1-2.

In all, defendant's conduct is significantly more severe than others convicted of possession of child pornography, and his sentence should reflect that disparity. His conduct was abusive; it was prolonged and calculated; it showed adeptness at deception and the ability to live a double life; and his failure to recognize these aspects of his offense and report them to treatment providers undercuts his claim that he desires real treatment or change and limits the potential effectiveness of any treatment that might be imposed on him. As the Court recognized in January 2020, "for whatever reasons, Mr. Sprenger developed, through a combination of his choices, his genetics, his experiences, he developed into the individual that we see depicted in this case. And that's the Adam Sprenger that we have to address here in court today, and that is an Adam Sprenger who presents a very real and significant risk to the safety of children and the public in general." Tr. 34:4-11. The facts supporting the

19

Court's reasoning are equally true today. Defendant is a danger to the most vulnerable members of society, and the Court's sentence needs to continue to protect the public from future crimes by him.

### C. The Need to Reflect the Seriousness of the Offense, Afford Adequate Deterrence, Promote Respect for the Law, Provide Just Punishment, Protect the Public, and Provide Correctional Treatment

As the Court has recognized, the possession of child pornography is "one of the most serious crimes that we recognize as a society." Tr. 28:24. That is as true today as when the defendant was first sentenced on Count Four. The instant offense involves over 1300 images and videos depicting the sexual abuse of children. Their abuse, and the photographs and videos permanently memorializing it, bring terrible, lifelong consequences to these child victims and their families. Defendant's sentence should reflect the seriousness of the offense, provide just punishment, and send a message to these victims that society values protecting them and does not tolerate their abuse, or their re-victimization by people like defendant who take pleasure in it.

One of the most important goals of defendant's sentence should be to deter him and others from committing these crimes. Defendant's conduct was calculated and persistent and escalated over time. He continued harassing Individual C even after she asked him to stop, to the extent that she needed to call security. General deterrence is also of paramount importance in the context of this heinous offense committed against society's most vulnerable members, our children. The Court's sentence must send the message to others who are tempted to enter this sick world

and contribute to the cycle of demand for these images that if they obtain, share, or possess child pornography, the consequences will be severe. And a 20-year sentence is further necessary to send the message to the victims of these horrific crimes that they are not objects to be used for people's deranged gratification, but precious human beings who matter. That although they were not protected at the time of their victimization, society now will protect them with all of its resources and punish severely those involved in their rape, molestation, and exploitation.

## IV. RESTITUTION

### A. Background

In light of the defendant's convictions, pursuant to 18 U.S.C. §§ 2259 (which was initially enacted as a component of the Violence Against Women Act of 1994) and 3663A (the Mandatory Victims Restitution Act, or MVRA), the government sought, and the Court ordered, restitution in the following amounts for the production victims:

Victim A - $15,000

Victim B - $15,000

Victim C - $15,000

Victim D - $3,000

Victim E - $3,000

And in the following amounts for the possession victims:

"Henley" - $5,000

"Fiona" - $3,000

"Chelsea" - $10,000

21

"Jenny" - $3,000

"Pia" - $5,000

"Maureen" - $10,000

Victim F – $5,000

The restitution awards based on the possession victims should be re-ordered, as nothing has changed in the count of conviction or the underlying facts which support them. With respect to the restitution to the production victims, in light of the Seventh Circuit's ruling and the dismissal of Count One, the government no longer requests restitution on behalf of Victim A. The restitution awarded to Victims B-E remains appropriate and should also be re-ordered. Defendant took the photos and videos sexually exploiting each of these minor victims, and, in the case of Victims B and C, distributed the videos to other men over the Internet. *See* R. 38 at 5, 7-8; G.V. Exhibits B, H, I. The defendant also produced a video in which he used Victims D and E (his girlfriend's young niece and nephew) for sexual exploitation by openly masturbating in the same room as them. Further, in his plea agreement, defendant agreed to pay additional restitution "arising from the stipulated offense conduct set forth above," which includes his exploitation of Victim B. Plea ¶ 14.

## V.    SUPERVISED RELEASE

Consistent with Probation's updated recommendation, the government recommends the imposition of a term of supervised release of ten years. In order to promote the sentencing objectives of deterring recidivism, protecting the public, and assisting in defendant's rehabilitation and reintegration into society, the government supports Probation's recommendation that the term of supervised release include the

conditions set forth in the PSR and requests that the Court enter the same conditions of supervised release.

## VI.  CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court sentence defendant to 20 years' imprisonment, which is the Sentencing Guidelines range. This sentence reflects the serious nature of the offense and the history and circumstances of the defendant but is not greater than necessary to reflect the goals of sentencing espoused in 18 U.S.C. § 3553.

Dated: May 5, 2023                          Respectfully submitted,

                                            MORRIS PASQUAL
                                            Acting United States Attorney

                             By:   */s/ Kelly Guzman*
                                   KELLY GUZMAN
                                   Assistant United States Attorney
                                   219 South Dearborn Street, 5th Floor
                                   Chicago, Illinois 60604
                                   (312) 353-1598